In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property of and Rehabilitate the NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of the Application of CENTRAL HANOVER BANK AND TRUST COMPANY.*

Supreme Court, New York County, November 23, 1933.

* See, also, *Matter of City Bank Farmers Trust Co.* (149 Misc. 498); *Kline* v. *275 Madison Ave. Corp.* (Id. 747). See opinion on reargument, 150 id. 351.

*Larkin, Rathbone & Perry* [*Albert Stickney, Francis S. Bensel, Theodore Pearson* and *Frank H. Heiss* of counsel], for the .petitioner.

*Greenbaum, Wolff & Ernst*, for George S. Van Schaick, as rehabilitator of the property of the New York Title and Mortgage Company.

FRANKENTHALER, J.   Petitioner is the holder of a bond and mortgage executed on June 5, 1924, by H. & W. Real Estate Corporation, as mortgagor, to 135 Broadway Holding Corporation, as mortgagee, and assigned by the latter to petitioner on October 31, 1927, at a time when the mortgage indebtedness amounted to $1,100,000, bearing interest at the rate of six per cent per annum. Simultaneously with the assignment, New York Title and Mortgage Company, hereinafter called the " company," delivered to petitioner its guaranty (1) that interest would be paid to petitioner at the rate of five and one-half per cent per annum as it became due under the bond and mortgage, and (2) that installments of principal would be paid as soon as collected by the company, but in any event within eighteen months after they became due and had been demanded by petitioner.

The guaranty contains the following provision: " By the acceptance of this guarantee this Company is made irrevocably the agent of the insured [the petitioner], with the exclusive right, but at its own expense, to sue for and receive the proceeds of any policy of fire insurance covering the mortgaged premises in favor of the insured, and to collect the principal at maturity and the interest as it falls due on the bond and mortgage hereby guaranteed, until the bond and mortgage are paid, and out of the interest so collected this Company is authorized to retain as its premium for this guarantee the excess over the guaranteed rate named above.

" This guarantee is subject to the conditions annexed hereto."

The " conditions " referred to include a covenant by the company " to conduct, without expense to the insured, all actions or proceedings that it may deem necessary to enforce the performance of any and all covenants contained in the bond or mortgage."

Other " conditions " consist of covenants on the part of petitioner, of which the following are important:

" 1. To permit this Company to collect all interest and the principal secured by said bond and mortgage, and to refrain from collecting any part of said interest or of the principal secured by said bond and mortgage except through this Company.

" 2.  *  *  *

" 3.  *  *  *

" 4. To permit the Company to buy in the property covered by said bond and mortgage and to take title thereto in the name of the insured, in case, at any sale of said property in any foreclosure suit brought by the Company in the name of the insured, no bid shall be received for said property sufficient to cover the amount of the judgment and the expenses of the sale.  In case the said property shall be so purchased by the Company in the name of the insured, the Company shall be entitled, upon paying the insured, his executors, administrators or assigns, the amount of the principal of said mortgage together with interest thereon at the rate hereby guaranteed (in so far as the same has not already been paid), to the conveyance of the said property to it or its nominee by the insured or his heirs or devisees, free and clear of all claims, charges and liens thereon created by the insured since the purchase thereof upon the said foreclosure, and to an assignment of the deficiency judgment entered in said foreclosure action.  Until such payment, or until the expiration of eighteen months from the due date named in said bond and mortgage, when such payment must be made by the Company, the Company shall be entitled to the possession and management of the said property and to control  and leasing, repairs and maintenance and insurance thereof at its own expense and to receive the rents and profits thereof, but at all times the liability of the Company under this policy shall continue until the insured shall have received the full amount of the principal guaranteed hereby with interest thereon at the rate guaranteed hereby.

" 5. To allow this Company, in the name of the insured, to exercise any right or option secured to the insured by said bond or mortgage, and, without further action on the part of the insured, this Company is authorized to enforce payment in the name of the insured from time to time, of any sums which may be or become

due under said bond and mortgage, or under any policy of title or fire insurance issued on the premises covered by said mortgage; and the insured is bound, on request of this Company, to produce and deposit with it for that purpose the bond and mortgage, all securities collateral thereto and all muniments of title held by the insured therewith, and to render such reasonable assistance to that end as this Company may require, but not to incur any expense in so doing."

Although the company has been collecting the rents and profits of the mortgaged premises since February 28, 1931, under an assignment of rents from the owner, it has failed to pay petitioner the interest due on June 5, 1933, amounting, at the guaranteed rate, to $27,328. It has likewise neglected to pay installments of principal, amounting to $6,250 each, due on June 5, 1932, December 5, 1932, and June 5, 1933, respectively. As to the principal installments, however, the guaranty allows the company a period of eighteen months within which to make payment to petitioner, and this period has not yet expired in respect to any of the unpaid installments. No taxes have been paid for either half of the year 1932, or the first half of the year 1933. The arrears of taxes at the time this application was made amounted to more than $59,000, exclusive of the taxes for the second half of the year 1933, which are undoubtedly also in arrears. Water rates for 1933 aggregating more than $1,300 are also unpaid. The principal of the bond and mortgage at the present time is $993,750.

On June 29, 1933, the company advised petitioner that it would commence a foreclosure action in petitioner's name. No such action was, however, instituted. On August 4, 1933, an order was made by this court directing the Superintendent of Insurance to take charge of the affairs of the company for the purpose of rehabilitation. The Superintendent has taken the position that a proper conservation of the assets of the company for the benefit of all its creditors, without preference to any, prevents his paying the disbursements necessitated by a foreclosure action or the arrears of taxes required by statute to be paid in the event that the property is purchased at the foreclosure sale in the name of petitioner. Although the guaranty provides that a foreclosure action instituted by the company shall be conducted without expense to petitioner, the Superintendent has refused to commence such an action unless a sum sufficient to cover the disbursements and taxes is deposited with him by petitioner.

Accordingly the petitioner has made the present application for the following relief:

(1) Permission to take over and control the administration and

enforcement of the bond and mortgage, with the right to foreclose the same and to purchase the property at a foreclosure sale; and

(2) Payment to it of the rents collected by the company together with an assignment of the rents hereafter to be received;

*upon condition, however, that petitioner's right upon the guaranty for any deficiency in principal and/or interest shall not be prejudiced by its withdrawal of the control and enforcement of the bond and mortgage from the company.*

The guaranty, it is true, provides that the company is to continue as irrevocable agent of petitioner with the exclusive right to enforce the bond and mortgage as " it [the company] may deem necessary," without interference on the part of the petitioner, " *until the bond and mortgage are paid.*" (Italics the court's.) Were the italicized words to be interpreted literally the company, by the very act of defaulting upon its guaranty, could prolong its exclusive control of petitioner's bond and mortgage indefinitely. The agency, according to the letter of the guaranty, is to persist not merely until the maturity of the principal of the bond and mortgage, nor merely until eighteen months after the expiration of such period, but rather until the petitioner has received payment of the bond and mortgage from the company, or — if the words " until the bond and mortgage are paid " are construed as referring to payment to the company by the owner of the mortgaged property — until the latter has made such payment. If neither the company nor the mortgagor ever pay the bond and mortgage the company would be permitted to retain control of petitioner's bond and mortgage forever without even paying interest to the latter in the interim. The absurdity of this result renders it obvious that the parties to the contract of guaranty could not possibly have contemplated that the *only* limitation upon the duration of the company's exclusive and irrevocable agency was that contained in the words " until the bond and mortgage are paid." On the contrary, the agreement is instinct throughout with the thought that the privileges conferred upon the company by petitioner are conditioned upon the company's continued performance of its guaranty. The primary and fundamental purpose of the contract is to assure to petitioner that it will receive payment of interest on its bond and mortgage as it becomes due and payment of the principal within eighteen months after its due date, regardless of whether the company is able to collect the interest or principal from the owner of the property. The provisions of the contract, *prepared by the company*, repeatedly refer to it as " this guaranty," thus furnishing the strongest possible evidence that the essential and predominant

object of the document is to insure the petitioner against non-receipt of the payments due to it on his bond and mortgage. Those provisions of the contract which confer upon the company the exclusive right to service the property and enforce the bond and mortgage are expressly termed " conditions " *of the guaranty,* thus indicating that they are designed for the protection of the company's right of subrogation while it is performing the guaranty. *To permit the conditions of the guaranty to remain while the guaranty itself is unperformed is unthinkable.* The sole purpose of the company's agency being the preservation and the enhancement of the value of its right of subrogation, the agency must fall when the right of subrogation ceases to exist by reason of the company's failure to comply with its guaranty. A condition that the irrevocable and exclusive agency of the guarantor shall endure only as long as the guaranty is met, though it is not expressed in the agreement, is clearly to be implied. The contract will then read: " This Company is made irrevocably the agent of the insured * * * until the bond and mortgage are paid, *as long as it continues to perform the terms of this guaranty."*

With the italicized words read into the contract, the clause " until the bond and mortgage are paid " takes on a sensible meaning which, as previously pointed out, it does not otherwise have. The agency of the guarantor extends beyond the maturity date named in the bond and mortgage in order to cover the contingency that the company may choose to take advantage of the eighteen months' period of grace in respect to the payment of principal to the insured. The latter has no cause to complain, for in the meantime it receives interest at the guaranteed rate and at the end of the eighteen months it obtains the principal. The continuation of the guarantor's agency until the payment of the bond and mortgage becomes unreasonable and absurd only if we fail to imply a condition that the guaranty shall be performed in the meantime as to both interest and principal.

The implication of such a condition has high authority to support it. In *Wood* v. *Duff-Gordon* (222 N. Y. 88) the plaintiff was employed as the exclusive agent of the defendant for the sale of the latter's products. The written contract, however, contained no express obligations on the part of the plaintiff. There was not even a promise in so many words that he would use reasonable efforts to sell the defendant's products. The Court of Appeals in an opinion by Judge Cardozo pointed out that such a promise was fairly to be implied (p. 91): " We think, however, that such a promise is fairly to be implied. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman,

and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation ' imperfectly expressed (SCOTT, J., in *McCall Co.* v. *Wright,* 133 App. Div. 62; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187, 198.) "

The following language of the court is peculiarly applicable to the instant case (p. 91): " The implication of a promise here finds support in many circumstances. The defendant gave an *exclusive* privilege. She was to have no right for at least a year to place her own indorsements or market her own designs except through the agency of the plaintiff. The acceptance of the exclusive agency was an assumption of its duties (*Phœnix Hermetic Co.* v. *Filtrine Mfg. Co.,* 164 App. Div. 424; *W. G. Taylor Co.* v. *Bannerman,* 120 Wis. 189; *Mueller* v. *Bethesda Mineral Spring Co.,* 88 Mich. 390). *We are not to suppose that one party was to be placed at the mercy of the other* (*Hearn* v. *Stevens & Bro.,* 111 App. Div. 101, 106; *Russell* v. *Allerton,* 108 N. Y. 288)." (Italics ours.)

A construction of the guaranty which would permit the exclusive agency of the company to continue despite its failure to perform its obligation under the guaranty would place petitioner at the mercy of the company.

Construction of the contract by implying a condition that the exclusive agency of the company shall be dependent upon its continued compliance with its guaranty receives additional support from the fact that the guaranty of at least one of the large guaranty companies in the city of New York, viz., Lawyers' Title and Guaranty Company, contains an express provision limiting the assured's obligation to permit the guarantor to have sole charge of the enforcement of the bond and mortgage by a provision that said obligation is to last only until the breach or termination of the guaranty. The guaranty of the Lawyers' Title and Guaranty Company is before this court upon a motion involving that company, decided simultaneously herewith. It contains the following language: " the assured agrees until the *breach or termination of this guarantee* to refrain from exercising any such option or privilege and from collecting any part of said interest or of the principal secured by said bond and mortgage except through the Company."

What is expressed in the guaranty of Lawyers' Title and Guaranty Company is clearly to be implied in the guaranty of New York Title and Mortgage Company. It is common knowledge that purchasers of guaranteed mortgages often investigated the mortgaged premises and exercised considerable discrimination in determining the soundness of the mortgages before arriving at a selection

of desirable investments. The guaranty alone was not always considered sufficient security. It is inconceivable that a construction of the guaranty which would permit the guarantor to retain exclusive control of the enforcement of the bond and mortgage without at the same time meeting its guaranty could have been within the contemplation of such investors.

It follows from the foregoing that petitioner is entitled to enforce its bond and mortgage and obtain the relief requested in respect to rents already collected and rents to be collected in the future without prejudicing such rights as it may possess upon the company's guaranty.

Various contentions advanced in opposition to this application may be briefly disposed of. The claim is made that the company has not been guilty of a breach of contract because its performance was prevented " by supervening acts of law which constitute excusable impossibility." The " acts " referred to are (1) the regulations issued by the Superintendent of Insurance forbidding guaranty companies from paying principal and interest to holders of guaranties except out of collections made from mortgagors, and (2) the order of this court which directed the Superintendent to take charge of the company for the purpose of rehabilitating it. We may assume, without deciding, that the company may not be held liable for breach of contract in so far as its failure to perform the terms of the guaranty occurred after the issuance of the regulations referred to. This does not mean, however, that it may also retain exclusive control of the enforcement of petitioner's bond and mortgage, for it was clearly the intent of the parties that the exclusive agency was to exist only as long as the company continued to perform. For the same reason there is no merit to the argument that the breach of the guaranty is not so material as to justify a termination thereof by petitioner. Nor is there any basis for the contention that the exclusive agency conferred upon the company may not be rescinded without releasing and discharging petitioner's claim upon the guaranty, because rescission, which disaffirms the contract, and a claim upon the guaranty, which affirms it, are alternative remedies. The termination of the company's agency involves no disaffirmance or rescission of the guaranty, the continued existence of the agency being impliedly conditioned upon the continued performance of the guaranty.

Before concluding, attention should be called to the statement in an affidavit submitted in opposition to the motion, (1) that in the latter part of July, 1932, the petitioner instructed the company " to apply the balance then on hand by virtue of the assignment

of rents, to the payment of taxes, before paying any installment of principal and interest, and to apply in the same manner whatever monies were collected in the future," and (2) that in June, 1933, the petitioner instructed the company to apply any balance then on hand toward the payment of the 1931 taxes in arrears, and from then on to apply seventy-five per cent of the net income collected under the assignment of rents, after deducting operating expenses, to the payment of interest due the petitioner. Assuming that such instructions were given, the company is nevertheless in default as to the June, 1933, interest. It used rents collected under the assignment of rents subsequent to February 28, 1931, to reimburse itself for interest which it had paid to the petitioner out of its own funds in December, 1930. This it had no right to do, as pointed out upon a motion decided simultaneously herewith. (See *Matter of City Bank Farmers Trust Co.*, 149 Misc. 498.) The amount of such payment ($25,379.17), together with the balance held for the petitioner as of September 28, 1933 ($24,952.74), are more than sufficient to pay the June, 1933, installment of interest, which still remains unpaid. Moreover, the briefs submitted on behalf of the Superintendent of Insurance, far from claiming that the company is not in default, actually proceed upon the theory that the company is in default as to the June interest (the Superintendent's contention being merely that the default is excusable because of the regulations and the order of rehabilitation).

The motion is granted. Affidavits will be received upon the settlement of the order to be entered hereon as to the amount of the rents which are to be paid over to the petitioner. Settle order.