In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property of and Rehabilitate the NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of the Application of CITY BANK FARMERS TRUST COMPANY Respecting Bond and Mortgage on Premises Now Owned by REPNAD REALTY CORPORATION and Guaranteed by NEW YORK TITLE AND MORTGAGE COMPANY.

Supreme Court, New York County, May 22, 1934.

*Mitchell, Taylor, Capron & Marsh* [*Edwin W. Cooney* and *Edward L. Hunt, Jr.*, of counsel], for the petitioner.

· *Greenbaum, Wolff & Ernst* [*Lawrence S. Greenbaum* and *Mitchell H. Shipman* of counsel], for George S. Van Schaick, as rehabilitator of the property of the New York Title and Mortgage Company, for the respondent.

FRANKENTHALER, J. The rents collected by the guaranty company under the assignment of rents obtained from the owner of the mortgaged premises were the property of the petitioner, the owner of the mortgage. (*Matter of City Bank Farmers Trust Co.*, 149

Misc. 498, 506, 507; affd., 241 App. Div. 808.)* The guaranty was prepared by the guaranty company. The latter could have provided that any rents received prior to foreclosure, under an assignment of rents or otherwise, were to become its own property. It did make such a provision in respect to rents and profits received after acquisition of title to the mortgaged property in the name of the mortgagee through foreclosure sale. It made no similar provision in regard to rents received while title remained in the mortgagor. " The fact that the only provision in the entire guaranty which purports to permit the company to retain for itself the rents and profits of the mortgaged premises is contained in a paragraph dealing solely with the situations arising after foreclosure sale tends strongly to negative any thought that the company was to have the same rights in respect of rents collected before a foreclosure action was even commenced." (*Matter of City Bank Farmers Trust Co., supra*, 507, 508.)

The guaranty company, it is true, was constituted the agent of the mortgagee for the purpose of collecting principal and interest and enforcing all the covenants of the bond and mortgage. The purpose of this agency, however, was merely to enable the company to control the enforcement of the bond and mortgage because of its vital interest in obtaining a maximum amount of revenue from the owner and/or the property and thus minimizing its own liability upon its guaranty. The agency was one to collect and enforce. It was not an agency to disburse what was collected as the guaranty company might see fit. The rents received pursuant to the assignment were the property of the petitioner and subject to the latter's orders. Had the assignment of rents been made directly to the petitioner as mortgagee, the latter could have used the rents for the payment of taxes, applying the balance, if any, to the payment of interest, and holding the guaranty company for any deficiency in the guaranteed interest. The fact that the assignment of rents was made to the company rather than to the petitioner does not deprive the latter of its right to have the rents applied to the payment of taxes before using any part thereof for the payment of interest. The rents collected by the company under the assignment were held by it primarily as agent of the petitioner. The manner of their application was a matter for the principal and not the agent to determine. (Of course, the guarantor could insist that any surplus *after payment of all proper charges* be used for the payment of guaranteed interest or principal.) The guaranty company could not, except with the authority or consent of its principal, apply the rents in the first instance to the payment of interest, thereby minimizing its own obligation on its

---

* Affd., 265 N. Y. 20.

guaranty and at the same time impairing the value of its principal's mortgage by subordinating the same to a prior lien for unpaid taxes. The company was under the primary duty of serving the interests of its principal and it had no right to subordinate those interests to its own by impairing its principal's security in order to reduce its own loss under its guaranty. It was for the principal and not for the agent to determine the manner of application of the principal's own funds.

The unfortunate results of a contrary doctrine may readily be perceived. In the case of a long term mortgage, the application of the income from the mortgaged property to interest payments, rather than to taxes and similar charges, if permitted to continue for a sufficiently long time, might ultimately transform a valuable first mortgage into a worthless second mortgage, e. g., if the total unpaid taxes and other liens should exceed the value of the property.

If the guaranty company could properly use the rents collected by it in reduction of the payments which it had guaranteed, without first paying taxes therefrom, it could with equal propriety use the *gross* rents received by it for the purpose of meeting its obligations upon the guaranty, without paying any of the expenses of operating the mortgaged premises. It could, for example, permit expenses for coal, employees and supplies to remain unpaid and thus leave the mortgagee, as its principal, liable for these expenses. There appears to be no valid basis for a distinction between the guarantor's obligation to pay ordinary operating expenses and its obligation to pay taxes accruing against the mortgaged property and thus impairing its principal's security.

It is true that the petitioner is in no event entitled to receive from the guaranty company more than the principal of its mortgage with accrued interest thereon. Had the guaranty company met its obligations to the petitioner by paying the principal and interest in full, the latter would have no cause for complaint. The difficulty here, however, arises from the fact that the company has failed to perform its guaranty and has left the petitioner with a mortgage subordinate to tax liens aggregating more than $44,000. Instead of paying the taxes out of the rents collected, it, in effect, used the rents for the purpose of paying the guaranteed interest, *without the knowledge or consent of the petitioner*. Had the petitioner been aware that the interest payments which it was receiving from the company were being made from funds belonging to the petitioner which should have been applied to the payment of taxes, it could have insisted that the company use said funds to pay the taxes and meet its guaranty from its own funds. In reality the guaranty company defaulted in the payment of the guaranteed interest as

early as September 1, 1932, for it should have used the rents to pay tax arrears and paid a greater amount out of its own funds to meet the guaranteed interest than it actually did. This default was not disclosed to the petitioner, which had no reason to suspect that the payments of interest were impairing and jeopardizing the mortgage securing its principal. Timely knowledge of the true state of affairs would have enabled petitioner either to obtain additional payments from the company in September, 1932, and March, 1933, or also, in the event that the company failed to pay, to revoke the agency and take over the enforcement of the bond and mortgage as well as the assignment of the rents. *The failure of the company to disclose its violation of the petitioner's rights lulled the latter into a false sense of security and enabled the company to retain control of the rents and of the enforcement of the bond and mortgage for more than a year thereafter.*

The statement of this court in *Matter of City Bank Farmers Trust Co.* (*supra*, p. 511), that " the rents or income collected during each half year are to be regarded as security for the payment of the installment of interest or principal falling due at the end of that half year and not for the payment of prior defaulted installments," did not refer to a situation where unpaid tax liens had been permitted to accumulate. The word " rents " was used by the court in the sense of *net* rents, *i. e.*, after deduction of taxes and other proper liens, as well as operating expenses.

In the light of the foregoing, any payments which the guaranty company made to itself out of rents belonging to the petitioner, while unpaid tax liens remained outstanding against the mortgaged property, were improper and constituted diversions of trust funds. If any of the diverted funds can be specifically traced and identified, the petitioner is entitled to a summary order directing them to be paid over to it.

The petitioner claims that even if the funds cannot be specifically traced and identified, it is entitled to impress a trust upon the company's bank account in which trust funds have been mingled with general funds of the company. This is correct. (*Matter of City Bank Farmers Trust Co.*, 149 Misc. 498, 512; affd., 241 App. Div. 808.)* The fact that the company made payments of interest to the petitioner on September 1, 1932, and March 1, 1933, without having received from the owner of the mortgaged property the sums necessary to make such payments would not affect this conclusion, since the payments would be deemed to have been made from the company's own funds, and the trust funds belonging to the petitioner would be regarded as having remained in the mingled bank account to the very last. (*Matter of Holmes*, 37

---

* Affd., 265 N. Y. 20.

App. Div. 15; affd., 159 N. Y. 532; *I. & T. N. Bank* v. *Peters,* 123 id. 272, 278.)

If the petitioner should, however, be unable to trace and identify the trust funds deposited in the guaranty company's bank account, the fact that it may impress a trust upon the company's mingled bank account would not be sufficient to entitle it to the relief now sought. This is so because of the impossibility of determining at this time, with any degree of certainty, the aggregate amount of trust claims which may ultimately be asserted against said account. It may be that the total of such trust claims, including that of the petitioner, will ultimately be found to exceed the aggregate of the assets impressed with trusts. To permit the petitioner to receive payment of its claim at this time might, therefore, result in an unjust preference. As this court pointed out in *Matter of Lawyers Title & Guaranty Co.* (150 Misc. 174), no provision for filing claims in rehabilitation proceedings had been made by the Legislature. Rehabilitation may go on for years. During this time neither the petitioner nor any one else possessing a trust claim against a mingled fund (as distinguished from a claim against specific trust funds capable of tracing and identification) may obtain payment thereof. The only relief which the court can grant at the present time, under such circumstances, is to require the rehabilitator to remove the amount for which a trust is impressed (as soon as said amount is determined) from the general funds in his possession and deposit them in his name in an appropriate earmarked account until such time as it is possible to ascertain with reasonable certainty the amount of similar trust claims asserted against said funds.

The deduction of $585.66 is, in the court's opinion, improper. The money having been paid to a wholly owned subsidiary of the guaranty company, the amount to which the petitioner is entitled will be increased accordingly.

From the $20,170.59 which the Superintendent of Insurance acknowledges to be held for the benefit of the petitioner in a separate account, the Superintendent is entitled to " deduct * * * a reasonable amount to cover the costs and expenses of any such collection, * * * or any other functions performed by him pursuant to this act " (Laws of 1933, chap. 745, § 4, ¶ b). In a case recently decided by the Court of Appeals (*Matter of People [Tit. & Mtge. Guar. Co.]*, 264 N. Y. 69), Judge LEHMAN, writing for the court, declared that under the statute referred to the Superintendent of Insurance could deduct from moneys belonging to the owner or owners of a guaranteed mortgage or group of mortgages a reasonable amount to cover his expenses

in connection with such mortgage or group of mortgages. As the deduction constitutes an expense of administration, the contention of the petitioner that its claim for the balance due to it should be credited against the deduction appears to be without merit.

The motion is granted to the extent of appointing a referee to take proof and report with his opinion with all convenient speed (a) as to what part, if any, of the $24,735.09 paid by the company to itself is segregated or capable of being specifically traced and identified; (b) as to what part of the $585.66 is segregated or capable of being specifically traced and identified; (c) as to the amount which the Superintendent is entitled to deduct from the $20,170.59 held for the petitioner, for the expenses incurred in connection with the petitioner's mortgage. The disposition of the balance of the motion will be held in abeyance pending the coming in of the referee's report. Settle order.