In the Matter of LAWYERS WESTCHESTER MORTGAGE AND TITLE COMPANY.*

(Issue No. 5–7902.)

Supreme Court, Westchester County, February 8, 1941.

*James T. Heenehan*, for the trustees.

*King, Hood & O'Connor*, for the petitioner.

* Affd., 262 App. Div. 878.   See, also, *Matter of 24–52 44h Street, Long Island City* (176 Misc. 249).

NOLAN, J. The trustees, in Series No. 5–7902, Lawyers Westchester Mortgage and Title Company, having come into possession of funds, paid over by the Superintendent of Insurance as liquidator of the company, as a five per cent dividend on account of the claim interposed on behalf of certificate holders, on the company's guaranty, have asked instructions from the court, as to the proper distribution of such funds, and as to the rights of the Superintendent of Insurance, and the certificate holders, with respect to such funds. The Superintendent has deducted from the dividend declared upon the claim allowed with respect to this series, the sum of $280.49, representing money advanced for foreclosure costs, and the sum of $339.44 for servicing fees, the costs having been advanced, and the services rendered prior to the promulgation of the plan pursuant to which the trustees are acting. It is claimed by some certificate holders that the dividend payments are not subject to the claims of creditors, nor to deductions by the State Superintendent of Insurance, but that they should be paid, without deduction for any purpose, to the certificate holders. It is claimed by the Superintendent of Insurance that the dividend payments are subject to deductions by him, of the amounts due him for advances for foreclosure, and for servicing, and it is claimed, on behalf of creditors, who have performed services and incurred expense, at the request of the trustees, that their claims are properly payable out of the dividends declared, before payment to the certificate holders. Instruction has been further requested, as to whether the dividend payments belong to the certificate holders, as the list is presently constituted, or to those persons who held certificates at the time when the company was forced into rehabilitation.

The trustees are acting pursuant to a plan promulgated by the State Superintendent of Insurance, as provided by chapter 745 of the Laws of 1933, commonly known as the Schackno Act. The security underlying the series originally consisted of a bond and mortgage in the sum of $50,000. Apparently, neither the bond nor the mortgage was transferred to the trustees, or their predecessors, elected pursuant to the plan, since, prior to the promulgation of the plan, the mortgage had been foreclosed, and title to the mortgaged property had been taken in the name of Law-West Holding, Inc. (See plan of reorganization, p. 4), a subsidiary of the Lawyers Westchester Mortgage and Title Company. The property, acquired by the trustees pursuant to the plan, was unimproved and non-productive, and no funds have come into the hands of the trustees, by virtue of the operation of the property. The only money which has come into the possession of the trustees

is the payment made on account of the dividend declared, and no funds will be acquired by the trustees from any source other than the dividends which will be declared hereafter, on account of the claim on the company's guaranty, allowed by the Superintendent, as liquidator.

I am unable to discover any authority which justifies the deductions made by the State Superintendent of Insurance. The Superintendent acted in a dual capacity. As a rehabilitator, or liquidator, he acted pursuant to the provisions of the former article XI of the Insurance Law, as a statutory receiver. As such receiver, it was his duty to conserve the property of the corporation, and to administer it, subject to the directions of the court, except in so far as discretionary power was vested in him by the Legislature. (*Matter of People [Title and Mortgage Guaranty Co.]*, 264 N. Y. 69.) No express power was granted to him as such receiver to administer mortgage investments which had I een sold, or guaranteed by the company. As rehabilitator, however, he was directed to take possession of the property of the insurer, and to conduct the business thereof. (Insurance Law, § 512, former § 402.) Part of the business of the company was the administration of guaranteed mortgages, as the agent of the holders of guaranteed mortgage certificates. In the administration of such mortgages, however, if he undertook such administration, he acted in the discharge of his duties as rehabilitator, in the interest of the corporation, and its creditors, and not in the interest of individual certificate holders, and had no authority, any more than the company had, to charge the expenses of such administration against funds due by virtue of guaranteed certificates. As liquidator, he was vested by operation of law with title to all the property, contracts and rights of action of the company. (Insurance Law, § 514, former § 404.) Conceivably, he might have administered the mortgage investments guaranteed by the company as such liquidator, but again, such service would have been performed in the interest of the creditors as a class, to preserve the assets, to be applied in satisfaction of their claims. The expense of such administration would have been a proper charge against general funds, since such administration would have resulted, not only in benefit to the holders of guaranties, but would also have resulted in preserving the general funds of the company, against claims by secured creditors. In so far as the Superintendent acted as liquidator, or as rehabilitator, he had no authority to deduct his expenses from specific funds due the holders of mortgage investments, to the advantage of other creditors, but was empowered to receive compensation, only from the general funds of the company. (Insurance Law, § 532, former § 414.)

Upon the enactment of the Schackno Act, the Superintendent was empowered to act, not only in the interest of creditors as a class, but also in the interest of the holders of specific mortgage investments, and was authorized with respect to such investments to " receive, collect and sue for the interest and principal of the bonds, mortgages and other security, * * * or to bring any foreclosure action on the same, and take title to the property sold under such action." He was also empowered, in connection with the administration of such investments, to " deduct from any sum so obtained a reasonable amount to cover the costs and expenses of any such collection, suit, or foreclosure action, or any other functions performed by him, pursuant to this act." (Schackno Act, § 4.) No authority was given him to charge the expenses of such services against the holders of mortgage investments, with respect to which he might have performed services. The deduction or charge was authorized to be made against funds which might come into his possession as the result of such services. In *Matter of Morgan* (277 N. Y. 203) the Court of Appeals read in these statutory provisions a legislative intent to limit the amount which the Superintendent might obtain. The statute may also be read as evidencing a legislative intent to limit the source from which the Superintendent's costs and expenses may be recovered.

The dividend to be distributed came into the hands of the Superintendent as the result of the liquidation of the insurer As liquidator, it was the duty of the Superintendent to distribute the funds remaining in his hands ratably among the creditors whose claims had been approved. Claims of secured claimants were allowed at a sum which represented the difference between the value of the security and the amount for which the claim was allowed. (Insurance Law, §§ 544, 545, former §§ 425, 426.) In valuing the security held by other creditors, it is fair to assume that the Superintendent made allowance for expenses of reorganization, foreclosure and of administration. (See *Matter of New York Title & Mortgage Co.*, 277 N. Y. 66.) Here it is conceded that the security had no value and the claim was, consequently, allowed in full. To deduct from such allowance the cost of servicing and attempted salvage of worthless security would not allow to the holders of certificates in this series the difference between the amount for which the claim was allowed and the value of their security, but would result in allowing to them considerably less than such amount, to the advantage of other creditors.

The deductions may not be justified on the theory of setoff. Offset is permissible where mutual debts or credits exist. (Insur-

ance Law, § 538, former § 420.) Debts and credits, to be mutual. must be due from the same persons, in the same capacity. (*Matter of New York Title & Mortgage Co. [Series Q-1]*, 260 App Div. 729.) Here, the dividend is payable by virtue of the indebtedness of the title company to the certificate holders. The claim of the Superintendent is asserted in his capacity as statutory receiver and is payable, not by certificate holders as debtors, but from specific funds. Under such circumstances, the right of offset does not exist (See *Matter of New York Title & Mortgage Co.*, 151 Misc. 701.)

The right of creditors, who have c aims against the trust estate, to participate in the dividend payments, must be determined in accordance with the construction properly to be given to the declaration of trust, under which the trustees are acting, and the statute, pursuant to which the trust was created. If the claim against the title company, on its guaranty, pursuant to which the dividend payment was made, passed to the trustees, and became part of the trust estate, by virtue of the declaration of trust, the creditors, whose claims are based on services performed at the request of the trustees, and are payable out of the trust estate (Declaration of Trust, art. XIII), are entitled to participate in the dividend.

The trustees, according to the declaration of trust, took a trust estate, which included " all claims and choses in action which the Certificate Holders as a class have or may have against Lawyers Westchester Mortgage and Title Company, upon its guaranty of said certificates and/or of the bonds and mortgages underlying the same." The trustees were empowered to " Enforce any and all rights and claims which the certificate holders as a class may have against the Lawyers Westchester Mortgage and Title Company, including all rights and claims upon the guaranty and upon all other agreements contained in Issue No. 5–7902 certificates."

Whether the claims of the certificate holders, by virtue of the guaranty and the agreement contained in the certificates, may properly be designated as class claims is extremely doubtful. In each case the guaranty contained in each certificate was made to, and the agreement to pay was made with the holder of the certificate. A breach of the guaranty, or the agreement gave rise to a specific cause of action, in favor of each certificate holder who suffered a wrong by reason of such breach. The right of action of one certificate holder in no way depended on the action taken by another. While the claims of certificate holders are similar in nature, it is doubtful that it can properly be said that certificate holders were united in interest, or had a common or general

interest with respect to their claims. (See *Brenner* v. *Title Guarantee & Trust Co.*, 276 N. Y. 230; *Matter of New York Title & Mortgage Co.* [*Series F*], 163 Misc. 37; *Matter of New York Title & Mortgage Co.* 257 App. Div. 19.)

It may well be, however, that it was intended, by the trust indenture, to transfer the claims in question to the trustees. The language employed is hardly susceptible of any other interpretation. It is extremely doubtful, however, that such a provision is valid. The authority of the trustees depends not only on the provisions of the declaration of trust, but also on the statute pursuant to which the trust was created. The trustees, concededly, may not exercise any power not conferred upon them by the terms of the trust indenture. Neither may they exercise any power, whether conferred by the provisions of the trust indenture or not, if the grant of such power is not authorized by statutory enactment, since they are purely statutory, and not voluntary trustees. (*Weil* v. *President, etc., of Manhattan Co.*, 275 N. Y. 238; *Mittleman* v. *President, etc., of Manhattan Co.*, 248 App. Div. 79; affd., 272 N. Y. 332.) It is questionable that the Schackno Act was intended to result in the transfer to the trustees of the individual claims of the certificate holders, by virtue of their contracts with the title company. If the statute should be so construed, a serious constitutional question would be presented. The purpose of the statute was to meet the emergency existing at the time of its enactment, caused by the fact that bonds and mortgages underlying guaranteed mortgage certificates, could not be administered, or dealt with in any way, without unanimous consent of the holders of certificates in each issue. To this end, the statute provided for the promulgation of plans of reorganization of mortgage investments, upon the consent of two-thirds of the holders of certificates of any issue, so that the trustees appointed thereby might thereafter represent 100 per cent of the holders of certificates of the issue in the administration of the bonds and mortgages underlying such issue. It was decided that the act was constitutional and that an assignment of the interests of certificate holders might be decreed upon the consent of two-thirds without the express consent of others, on account of the emergency, which justified the enactment of the statute. It does not appear that there was ever an emergency which required interference with the rights of certificate holders to enforce their individual guaranties. Any provision of the trust indenture, therefore, transferring to the trustees, the claims on such guaranties, would be without effect, as not contained in the legislative emergency mandate (See *Mittleman* v. *President, etc., of Manhattan Co., supra; Weil* v. *President, etc.,*

*of Manhattan Co., supra; Matter of People [Title & Mortgage Guarantee Co.], supra; Matter of New York Title & Mortgage Co. [Series F], supra.)* Neither may it be urged that the right to enforce the guaranty is vested in the trustees by virtue of their right to enforce the principal obligation. *(Westchester Mortgage Co.* v. *McIntire, Inc.,* 168 App. Div. 139.) Such is the general rule, but the rule is only applicable where one entitled to enforce the principal obligation is in possession of the obligation which is the subject of the guaranty, and out of which the obligation to pay under the guaranty arises *(Security-First Nat. Bank of Los Angles* v. *Lloyd-Smith,* 259 App. Div. 220.) Here, the bond and mortgage were not enforced by the trustees, and in any event, the guaranty ran, not to the holder of the bond and mortgage, but to the holders of the certificates. The trustees have never had possession of the certificates.

It has been urged that a decision that the right to enforce the guaranties did not pass to the trustees by the trust indenture will result in invalidating the claims of all certificate holders who did not file individual claims. There is no reason why such a result should follow. Claims were made by the trustees on behalf of the certificate holders, in each series, and the names of such certificate holders were recited in a schedule attached to each claim filed. Such claims were recognized and allowed by the Superintendent, and an order has been entered confirming such allowance, from which no appeal has been taken. It is too late now for any party to the proceeding to object to the form in which the claims were interposed. There is no reason why the dividends may not be distributed, through the trustees, as a matter of convenience, even though they had no right to enforce the claims on which the payments have been made.

In this series most of the present holders of certificates were certificate holders at the time of the entry of the order of rehabilitation. Some, however, hold their certificates by assignments, made and registered after default by the company. In no case does it appear that there was any reservation of rights by the assignors. The form of assignment is as follows: " For value received, the undersigned holder of the within certificate, hereby assigns, transfers and sets over the same, and all his right, title and interest thereunder, together with the interest due thereon to   *   *   *.''

The guaranty, set forth in the certificate, was " to said assured or to any other lawful holder hereof," and it was provided that " This certificate may be assigned by indorsement."

Whatever right the certificate holder had to the guaranty, or to enforce payment by the company, he acquired by virtue of the

certificate.  The certificate was a contract for the payment of money to the certificate holder.  Though there may have been a breach of the contract, prior to the assignment, the language of the assignment is clear, and obviously contemplates not only the transfer of the assignor's interest in the security, but also of all right to recover, as against the title company, on its guaranty, and on its agreement to pay the principal sum, and interest, mentioned in the certificate assigned.  It is a familiar rule in construction of contracts that they are to be read in the light of surrounding circumstances.  Kindred to this rule is another, that a written instrument is always to be so interpreted as to give it some effect.  (*Waldron* v. *Willard*, 17 N. Y. 466.)  These rules may be applied with particular force in determining the effect of the assignments in this series, since it is conceded that the security is valueless, and it is apparent that all an assignee could have expected to receive, on acquiring a certificate by assignment, was the right to participate in the dividends to be declared by the liquidator of the title company.

An order may be entered, therefore, directing the Superintendent of Insurance to pay to the trustees, for distribution to the certificate holders, the sums of money deducted from the dividend, and retained as reimbursement for advances for foreclosure costs, and as payment for servicing, and directing the trustees to distribute among present registered holders of certificates in the series, the entire dividend received.  Settle order on notice.