In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property of, and Rehabilitate the LAWYERS TITLE AND GUARANTY COMPANY.*

In the Matter of the Application of CITY BANK FARMERS TRUST COMPANY Respecting BOND AND MORTGAGE WILLIAM AND BEAVER CORPORATION Guaranteed by the LAWYERS TITLE AND GUARANTY COMPANY.

Supreme Court, New York County, January 16, 1934.

---

* See, also, 149 Misc. 498.

*Mitchell, Taylor, Capron & Marsh* [*Edwin W. Cooney* and *Edward L. Hunt, Jr.*, of counsel], for the petitioner.

*Greenbaum, Wolff & Ernst* [*Lawrence S. Greenbaum* of counsel], for George S. Van Schaick, as rehabilitator of the property of Lawyers Title and Guaranty Company.

FRANKENTHALER, J. In granting the original motion " to the extent of directing the Superintendent to pay over to the petitioner the rents and profits received by the company or by the Superintend-

ent from the owner of the mortgaged property," the court followed the well-established principle that " the mere mingling of funds which are to be devoted to a specific purpose with other funds of the depositary does not destroy the right of the true owners to claim such specific funds." The court recognized, however, that an application to compel the turn over of trust funds which had been so mingled with other moneys as to defy tracing or identification should not be granted if " the funds in the hands of the liquidator might appear insufficient to meet the claims of petitioner and others similarly situated." (*Matter of International Milling Co.* [*Broderick*], 259 N. Y. 77, 85.) Accordingly, the Superintendent of Insurance was afforded an opportunity of submitting, upon the settlement of the order, affidavits " showing the total amount of claims against the company for the return of trust funds and the aggregate amount of assets available to meet them.".

In support of a motion for reargument counsel for the Superintendent states that " the relief so granted is tantamount to an order of liquidation. In order to submit affidavits showing ' the total amount of claims existing against the company for the return of trust funds ' it would be necessary to serve notice upon all possible claimants, to set a reasonable time for the filing of all claims, and to follow generally the entire statutory procedure laid down in Article XI of the Insurance Law for the liquidation of an insolvent insurer." He points out that "Article XI makes no provision for, and does not contemplate proof of claims in rehabilitation but only in liquidation," and urges that " the difficulty or impossibility of obtaining proof ' showing the total amount of claims existing against the company for the return of trust funds ' constitutes \* \* \* a sufficient basis for the denial of the reclamation granted to the bank upon its motion."

It is, unfortunately, true that the Legislature has made no provision for the filing of claims against an insurer which is in the hands of the Superintendent of Insurance for purposes of rehabilitation. The sections of the Insurance Law which authorize the filing of claims and the barring of unfiled claims are sections 404, 424, 425 and 426, and these apply solely to claims made in a " liquidation proceeding." In this state of the law, the Superintendent is obviously unable to determine with any degree of certainty the aggregate amount of trust claims which may ultimately be asserted against the funds in his possession as rehabilitator. It is quite likely that many claims of trust relationship, bailment and breaches of trust may be made in cases where the records in the Superintendent's possession fail to disclose any facts which would put the latter on notice of the possibility that such claims might be

asserted. In the absence of a judicial determination of the validity of trust claims, the Superintendent is *a fortiori* unable to ascertain which claims are to be treated as proper, and which may be disregarded.

Until and unless it is definitely established that the total amount of trust claims does not exceed the aggregate of the assets impressed with a trust, the granting of applications for the payment of untraced and unidentified trust funds would manifestly be improper. The funds available to pay trust claims might be exhausted before all those asserting such claims could apply for payment, and unjust preferences might thus be awarded to the earliest applicants. This would place an improper and undue premium upon speed in invoking the aid of the court, and would result in a race between the thousands of persons whose situation is similar to that of the present petitioner. If the valid trust claims exceed the assets upon which they are a·charge, the claimants are not entitled to receive more than their *pro rata* shares of said assets.

As it is impossible for either the Superintendent or the court to ascertain the aggregate amount of valid trust claims which may be filed or asserted against the funds of the company, the court is unable, at this time, to direct the payment to the petitioner of any trust funds which cannot be specifically traced and identified. In the *International Milling Co. Case (supra)*, where the Court of Appeals affirmed an order granting a summary application for payment of mingled trust funds, although they could not be traced and identified, it was apparent to the court that the funds in the hands of the liquidator were sufficient to pay all trust claims, and the Superintendent of Banks had made no claim to the contrary. It was well known that the assets of the bank there involved were even sufficient to make substantial payments to depositors. No such situation is presented here.

The court is fully aware of the hardship and injustice to the petitioner and others similarly situated, which must inevitably result from the denial of relief as to trust funds belonging to them which have been mingled with others in such a way that they cannot be specifically traced and identified. There is no way of knowing when rehabilitation will end. Under the provisions of the Insurance Law, an application to terminate rehabilitation in order to liquidate an insurer, may be made solely by the Superintendent of Insurance, if he " shall deem that further efforts to rehabilitate such insurer would be futile." (Insurance Law, § 402, subd. 2.) It is only where the application to terminate rehabilitation seeks to permit the insurer " to resume possession of its property

and the conduct of its business " that the application may be made by " any interested person." (Insurance Law, § 402, subd. 3.) As the Legislature has fixed no time limit in respect to the duration of efforts to rehabilitate an insurer, it is conceivable that rehabilitation may last indefinitely, perhaps for years. In the meantime claimants of mingled and unidentifiable trust funds are left without any remedy. Indeed, it is quite possible that the mingled trust funds belonging to the petitioner and others similarly situated are being used up for the purpose of operating the company during rehabilitation. It may well be that the company cannot be kept alive through rehabilitation without resort to these mingled trust funds. If this be the fact, if the efforts to rehabilitate the company are being financed with trust funds which do not belong to the latter, it is manifestly unjust and unfair to the owners of the trust funds to compel them to remain without remedy while their funds are being depleted. It is difficult to believe that the Superintendent may rightfully rehabilitate an insurer with funds belonging to others without the permission or consent of the owners. By the time liquidation is ordered, if that course should ultimately prove necessary, the owners of the mingled trust funds may find them entirely used up. To meet the unfortunate and intolerable situation which confronts those whose trust funds are mingled in such a way that they may not be specifically traced and identified, it appears to be imperative that suitable legislation be promptly enacted. In the court's opinion statutory provision should be made for the filing of trust claims against an insurer in the process of rehabilitation within a specified period, and for the waiver of the right to assert a trust claim (without prejudice to the right to claim as a general creditor) by failing to file within the designated period. Adequate provision for notice to trust claimants should also be made. A procedure should likewise be set up for a judicial determination of the validity of trust claims thus filed. There is ample justification for this differentiation between trust claims and general claims. The former relate to property which belongs to the claimants and not to the insurer. General creditors, on the other hand, have no claim to specific assets and may properly be compelled to delay enforcement of their claims while efforts are made to rehabilitate their debtor. Otherwise rehabilitation would seldom, if ever, succeed. Owners of trust funds in the possession of the insurer are, however, in an entirely different position. The insurer cannot properly be rehabilitated with their funds except with their consent. They have the right to obtain possession of their property. The Legislature should provide an appropriate remedy to enable them to avail themselves of that right.

Perhaps in addition to setting up machinery for the ascertainment of trust claims, the court should be given the power to terminate rehabilitation and direct liquidation upon the application of any interested person. In its present form the statute permits the Superintendent to keep an insurer in rehabilitation indefinitely. Although the judgment of the Superintendent is entitled to great weight in determining whether there is a reasonable probability that rehabilitation will be successful, there appears to be insufficient justification for constituting him the sole arbiter as to whether rehabilitation should end and liquidation begin, and for authorizing him to keep an insurer in rehabilitation indefinitely, with creditors' remedies suspended in the meantime. Certainly this is true as to creditors possessing trust claims.

To the extent that trust funds belonging to the petitioner are segregated or are capable of being specifically traced and identified, although mingled with others, the petitioner is entitled to immediate relief since the rights of other trust claimants are not thereby involved or affected. The affidavit of Stoehr, submitted on behalf of the Superintendent, shows that at least $19,205.98 belonging to the petitioner is segregated in a separate and distinct fund. Although the same affidavit states that the other trust moneys of the petitioner have been mingled with funds of others, the petitioner is not obliged to accept that statement as true. It has the right to attempt to trace and identify the trust funds which belong to it. It likewise has the right to ascertain for itself the exact amount collected by the company or by the Superintendent which it can properly claim as trust funds.

This motion is granted to the extent of (1) directing the payment of $19,205.98 to the petitioner; and (2) appointing a referee to take proof and report with his opinion, with all convenient speed, (a) as to the amount collected by the company and by the Superintendent which the petitioner may properly claim constituted trust funds belonging to it; (b) as to the amount of such trust funds which are segregated or which may be specifically traced and identified; and (c) as to the amount of such trust funds which have been so mingled that they are incapable of being specifically traced and identified. In all other respects the motion is denied. Settle order.