In the Matter of the Liquidation of LAWYERS TITLE AND GUARANTY COMPANY.*

In the Matter of the Application of the Liquidator to Substitute Securities in Place of Cash Held for the Benefit of Certain Trust Claimants.

Supreme Court, Additional Special Term, New York County, February 2, 1937.

*Herman Berniker* [*William Wolfman* of counsel], for the Superintendent of Insurance, as liquidator of Lawyers Title and Guaranty Company, for the motion.

*Stewart & Shearer* [*Harold F. Pritchard* of counsel], for the United States Trust Company.

*Cullen & Dykman* [*Ralph W. Crolly* of counsel], for the Brooklyn Trust Company.

* See, also, 122 Misc. 188.

FRANKENTHALER, J.   This is an application by the Superintendent of Insurance, as liquidator of Lawyers Title and Guaranty Company, to withdraw the sum of $82,394.76 from a segregated account in which said sum was previously deposited, and to substitute in place thereof certain mortgages and real estate.   From time to time, as it was found that the title company had improperly paid to itself funds belonging to holders of mortgages and mortgage certificates, this court made orders directing the Superintendent to withdraw from the general funds of the company and deposit in a separate account a sum equal to the amount wrongfully recouped.   These orders are hereinafter referred to as orders of segregation.   As a result of such orders of segregation, except in two instances where the Superintendent voluntarily deposited the amount improperly recouped, thirty-two deposits aggregating $132,394.76 were made by the Superintendent as rehabilitator, and later as liquidator, of the title company.   The liquidator now claims that the tieing up of so great an amount of cash has left him with a relatively small balance of free cash with which to conduct the liquidation.   In order to avoid selling assets in his hands, consisting of real estate and mortgages, at what he terms " sacrifice prices," the liquidator asks the court to approve the withdrawal of $82,394.76 from the segregated account and the substitution of real estate and mortgages alleged to have a present market value of $200,000.   Under the plan proposed by the liquidator the cash remaining in the account, viz., $50,000, together with the real estate and mortgages, are to be held for the benefit of the trust claimants who obtained orders of segregation, as well as for others who may hereafter secure such orders, until the total ordered to be segregated reaches $200,000.

The application to permit the substitution is vigorously opposed by most of the trust claimants who obtained orders of segregation. They point out that the granting of the application would substitute unliquid securities for liquid cash.   The claimants have, so far, been unable to obtain payment of the amounts wrongfully recouped, in breach of trust, in view of the fact that the total number of trust claims may ultimately exceed the amount of the assets available to pay them.   (*Matter of International Milling Co.*, 259 N. Y. 77, 85.) As the provisions of the Insurance Law relating to the filing of claims have no application to trust claims (Compare *Matter of Prime*, 249 App. Div. 28; *Matter of International Milling Co.*, *supra*, pp. 84, 85) it is probable that some time must still elapse before those who obtained orders of segregation will be in a position to secure payment.   The substitution of real estate and mortgages for cash can in no way benefit the trust claimants, but it may well

work substantial prejudice to them. Before any distribution could be made to them, at the proper time, it would be necessary to liquidate the real estate and mortgages, a process which is likely to delay the distribution indefinitely. It may be exceedingly difficult to obtain all cash for the real estate unless distress prices are accepted. It may be necessary to foreclose some of the mortgages. To partition the real estate and mortgages among the trust claimants would result in forced sales at sacrifice prices, and also in considerable expense. Moreover, all the trust claimants would be obliged to keep constant watch upon the values of the substituted real estate and mortgages in order to insure that their market value at all times is considerably in excess of the total amount ordered to be segregated. This would be a very difficult task, not to mention the expense required for the repeated periodic appraisals which would be necessary.

In the court's opinion, a proper protection of the rights of those who have obtained orders of segregation requires that the application for the substitution of unliquid assets for liquid cash be denied. As the liquidator requires additional amounts of cash, he will be obliged gradually to dispose of the real estate and mortgages now in his possession. To grant the application might well result in the use of trust funds for liquidation expenses, a possibility which this court pointed out three years ago, stating that it was " quite possible that the mingled trust funds belonging to the petitioner and others similarly situated are being used up for the purpose of operating the company during rehabilitation." (*Matter of Lawyers Title & Guaranty Co.*, 150 Misc. 174, at p. 178.) Those who have established trust claims should not be obliged to run the risk that the unliquid securities proposed to be substituted for cash may eventually fail to realize enough to pay their claims, nor should they be compelled to accept the further delay in distribution which the substitution would inevitably entail.

Motion denied.