In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the NEW YORK TITLE AND MORTGAGE COMPANY.

Supreme Court, New York County, May 3, 1935.

*Harry Rodwin* [*Adolph Kaufman* of counsel], for the Superintendent of Insurance.

*Allin, Tucker & Allen*, for the committee for reorganization.

FRANKENTHALER, J.    This is a Schackno Act proceeding for the reorganization of series B-8 of guaranteed mortgage certificates, issued by the New York Title and Mortgage Company and representing participating interests in a single first mortgage in the unpaid principal amount of $575,000 on an apartment house at 441 Ocean avenue, Brooklyn, N. Y.   The proposed plan calls for the election of a trustee to administer the mortgage.   The situation here is very similar to that presented in connection with series BX-19, and the plan will accordingly be modified so as to make it conform to the plan for series BX-19, as modified and approved by the court (154 Misc. 447).

The testimony at the hearing disclosed a deplorable state of affairs in respect to the financial results of the operation of the property during the period of rehabilitation.

The record owner of the property is Liberdar Holding Corporation (a wholly owned subsidiary of the title company), which acquired

title through a partial foreclosure. For the year 1934 the net income of the property available for the payment of interest, calculated on an accrual basis, was only $7,865.96, or about one and four-tenths per cent of the unpaid principal amount of the mortgage. In arriving at this figure, the only management expenses taken into consideration were management fees of $1,813.80 and renting commissions of $522.26.

From the aforesaid $7,865.96 which the property earned in 1934, there are still to be deducted (1) the charges of the equity receivers of Liberdar, (2) the fees of the Superintendent of Insurance as rehabilitator, (3) the fees of the Servicing Corporation of New York, which succeeded the Superintendent in respect to the servicing of the mortgage, and (4) an " overriding " commission of $300.50 paid to Nyamco Associates, Inc., a wholly owned subsidiary of the title company, for two months' supervision of the collection of rents from the property. A reserve of ten per cent of the gross rents for the payment of receivers' fees and expenses has been authorized by the United States District Court for the Eastern District of New York. This amounts to $7,068.68 for the period from August 18, 1933, to August 31, 1934 (the only period for which detailed figures are available), to which is to be added the receivers' charges for the subsequent period until March, 1935. The Superintendent of Insurance is also setting aside a service fee reserve of $1,776.91 for the period from August 5, 1933, to July 31, 1934. In short, although the property shows a yearly return of only $7,865.96 available for interest, the amount reserved or paid out during a single year for the receivers, the Superintendent of Insurance and Nyamco Associates, Inc., is about $9,000. This means that the property, instead of yielding some income for the certificate holders, is producing a substantial deficit.

The fees of the Superintendent and of the Servicing Corporation are being charged against the certificate holders although no payment of interest has been made to them during the entire period of rehabilitation, the interest for June 1, 1933, still being partly in arrears. It was admitted that during the period for which the Superintendent charges his servicing fee no money passed through his hands; the equity receivers " were taking all the money and keeping it; " the rehabilitator did not handle any, but " just had a service fee." The Servicing Corporation of New York was paid a servicing fee of more than $1,000 for the period from August 1, 1934, to February 28, 1935, although it did not collect or disburse any cash, except to perform the purely ministerial function of paying over to the city collector for the payment of taxes moneys turned over to it by the equity receivers. This payment could

just as easily have been made by the receivers themselves, and in itself can hardly justify a substantial servicing fee. When counsel for the certificate holders' committee asked what justification there was for this service charge, the Superintendent's representative testified as follows: " They sent statements to the certificate holders relating to this issue; " " They maintain a contact department, wherein all certificate holders may come in and get personal contact with the men in that department relating to the mortgage." For this the certificate holders were charged more than $1,000, as aforesaid.

The facts here closely resemble those commented upon by the court in connection with series BX-19 (154 Misc. 447). It is difficult indeed to justify saddling the certificate holders, who have received no income in almost two years, with so many different charges for administration and management.

In *Fearey* v. *Williams* (72 F. [2d] 263) the Circuit Court of Appeals held that the title company had no right to purchase the property in the name of its subsidiary upon a partial foreclosure of a guaranteed mortgage, and that the subsidiary's right to the rents ceased immediately upon the title company's default upon its guaranty. The same reasoning is equally applicable to a single mortgage owned by certificate holders rather than by an individual as in the *Fearey Case (supra)*. Although this decision was rendered July 16, 1934, no assignment of rents from the equity receivers was obtained until the latter part of March, 1935. Had an assignment been procured, the reserve for the equity receivers for the period from July, 1934, to March, 1935, amounting to approximately $4,000, would have been saved for the certificate holders.

Since the date rehabilitation proceedings were instituted the property has continuously been earning more than enough to pay taxes. Nevertheless, taxes for the second half of 1932 and for the first half of 1933, which were the only taxes in arrears on the date rehabilitation commenced, were not paid until October, 1934, fourteen months after the Superintendent had assumed control. As a result, the certificate holders have had to suffer tax penalties aggregating $3,224.14, as compared with tax requirements of $16,298 for the full year 1934. In other words, tax penalties allowed to accumulate, although the equity receivers had enough money on hand to pay the taxes, amounted to twenty per cent of a whole year's taxes.

The proposed plan for the administration of the mortgage by a trustee elected by the certificate holders is accordingly approved, with the modifications previously indicated. Settle order and plan on three days' notice.