In the Matter of the NEW YORK TITLE AND MORTGAGE COMPANY
(Series B-1, B-8, BX-19, N-30, N-54, N-74).

Supreme Court, New York County, November 27, 1935.

478

*William A. Shea*, for the Superintendent of Insurance.

*Sylvester & Harris* [*Leon Leighton, Sidney Harris* and *Charles L. Sylvester* of counsel], for the Brentmore Estates, Inc.

*Abraham M. Geller* [*Abraham M. Geller* and *Irving J. Galpeer* of counsel], for certificate holders in series N-83, N-108.

*Weil, Gotshall & Manges*, for certificate holders in series C-2.

*Allin, Tucker & Allen* [*John M. Stoddard* of counsel], for certificate holders in series B-8.

*Weiss, Pels & Grant* [*Julius Weiss* of counsel], for certificate holders in series BX-19.

FRANKENTHALER, J. Holders of mortgage certificates issued and guaranteed by the New York Title and Mortgage Company in six different series (B-1, B-8, BX-19, N-30, N-54 and N-74) have made separate applications to compel the Superintendent of Insurance to make available for the payment of taxes or interest due to the certificate holders of each of said series certain sums deducted by him and by the Servicing Corporation of New York as his agent. These sums were deducted as reserves to cover the fees of the Superintendent and the Servicing Corporation for " servicing " mortgaged properties during a period when the latter were managed by receivers appointed by the Federal court for Land Estates, Inc., and Liberdar Holding Corporation (wholly owned subsidiaries of the title company) which held title to the properties.

The Superintendent of Insurance, as rehabilitator of the New York Title and Mortgage Company, has in turn made an independent motion (1) for a determination of " the right of said Rehabilitator and of the Servicing Corporation of New York " to deduct a " servicing fee " for *every* certificated mortgage issue of the New York Title and Mortgage Company "where the titles to the properties subject to such mortgages were vested in Land Estates, Incorporated, and Liberdar Holding Corporation, respectively," including the six issues previously referred to; (2) for the fixation of such fee; and (3) for an order directing him to refund, for the benefit of certificate holders, any deductions made in excess of the fees thus fixed. One hundred and eighty-four thousand three hundred and thirty-six dollars and twenty-six cents of the certificate holders' money is at present held by the Superintendent as a reserve for servicing fees in connection with properties managed by the Federal receivers.

In addition, the Superintendent of Insurance asks that his application be consolidated with the six certificate holders' motions. As there is no opposition the application to consolidate will be granted.

Some time after the filing of the petition in support of the Superintendent's application, a supplemental affidavit was submitted in his behalf asking " that the determination of the exact amount of the service charge which the Superintendent of Insurance and the Servicing Corporation of New York may properly make * * * be withheld until such time as the Federal Courts have decided what amount, out of the receivers' reserve for administrative expenses, shall be returned to the certificate holders." According to the affidavit the fixation of the receivers' fees and charges is to await the commencement of appropriate proceedings by the trustees or other representatives of various issues and " *perhaps* by the Mortgage Commission of the State of New York in respect of all issues which may not be adequately represented by trustees or otherwise." (Italics the court's.) There is no definite assurance as to the time when any of these proceedings will be brought. Many, if not most, of them may not be initiated for a long time to come. No claim is made that the Superintendent of Insurance himself intends to institute such proceedings. Under these circumstances it is manifestly inadvisable that the determination of the Superintendent's present motion, in so far as it relates to the proper amount of the servicing fees, be held in abeyance indefinitely. It is preferable that the motion be denied, without prejudice. Indeed, as will now be pointed out, no other disposition is possible upon the present moving papers. The Superintendent of Insurance may charge the funds of any particular issue only for functions performed by him in the administration of that issue. (*Matter of People* [*Title & Mtge. Guar. Co.*], 264 N. Y. 69, 91.) The servicing fee for any specific issue, in cases where the Superintendent is entitled to such a fee, must necessarily depend upon the nature, quantity and result of the services rendered in connection with the affairs of that issue. Nevertheless, no attempt is made in the papers submitted by the Superintendent in support of his application to differentiate the services rendered on the basis of the particular issues for which they were performed. On the contrary, his petition states that " it is impossible to present to this court a detailed statement of each act of service performed in respect of each issue or property," and that, therefore, " effort has been made to fix a fair and equitable amount as the cost of servicing or administration by spreading the cost of such servicing over all certificated issues *in the ratio that the principal amount of the mortgage or mortgages of each issue bears to the total principal amount of all certificated*

*mortgages.*" (Italics the court's.) Although there may be some justification for this method of apportionment in the case of certain kinds of services performed by the rehabilitator, it is obvious that there are other services whose cost cannot properly be charged on any such arbitrary basis. For example, one of the largest mortgages included in series C-2 covers premises known as Hampshire House, an uncompleted, vacant building which not only produced no income but was even a source of great expense to the certificate holders. The services rendered in connection with such a building cannot be treated, for the purpose of computing the servicing fee, on the same basis as the services performed in relation to properties producing a substantial income to the certificate holders. Calculation of the servicing fee for Hampshire House by taking a fixed percentage of the principal amount of the mortgage would result in a very large fee for services which may have been relatively trivial. The impossibility of determining from the Superintendent's petition the services rendered to any specific issue, therefore, furnishes additional reason for denying the motion, without prejudice, rather than withholding decision in respect to the amount of the service fees. The proper amount of the servicing fee should be left for determination in appropriate proceedings relating to each issue, in which the certificate holders of the respective issues may have an opportunity to be properly represented. It is even impossible to determine from the papers presented on the Superintendent's application the *aggregate* (*i. e.*, without apportionment to the various issues) cost of his administration of all the certificated issues involved in the application.

Accordingly, to the extent that the Superintendent seeks an adjudication as to the amount of his servicing fee, the motion is denied, but without prejudice.

There remains for determination on the Superintendent's motion only the question whether he and his agent, the Servicing Corporation of New York, are entitled to any servicing fees in respect of properties of Liberdar Holding Corporation and Land Estates, Inc., for the period during which the properties were managed by the Federal receivers of those corporations. This is likewise the only question presented by the six motions with which the Superintendent's application has been consolidated. Counsel for the six movants specifically request that " if this Court should decide * * * that the Superintendent may properly claim a fee, the amount of such fee should be left for determination in an appropriate proceeding to be brought by the trustees of the respective issues after they shall have been selected."

The claim is made that the Superintendent and the Servicing Corporation are entitled to no " servicing " fee whatsoever because the servicing was performed by the Federal receivers and not by the Superintendent or the Servicing Corporation. If the servicing of mortgages consisted only of supervising the management of mortgaged properties it might be that the Superintendent and the Servicing Corporation would not be entitled to a " servicing fee." Counsel for the Superintendent of Insurance has expressly admitted that this work " was done by the equity receivers." There are, however, other services for the cost and expenses of which the Superintendent is expressly authorized by statute to make deductions in reasonable amounts. The Schackno Act (Laws of 1933, chap. 745, as amd.) provides (§ 4, ¶ b) that the Superintendent may deduct a reasonable amount to cover the costs and expenses of (a) collecting the principal or interest, whether by suit, foreclosure or otherwise, and (b) performing " any other functions * * * pursuant to this act." The " other functions " referred to include the following: (1) The taking over, conduct and control of any or all the functions of any guaranty corporation with respect to certificated mortgages (§ 3); (2) the distribution of principal and interest to certificate holders (§ 4,¶ c); (3) the temporary withholding of funds from distribution; (4) the application of funds " for any purpose whatsoever which he deems advisable or necessary for the protection of the interests of the holders of such mortgage investments " (§ 4, ¶ c, cl. 2); (5) the promulgation of plans of reorganization (§ 6, subd. 1) and the various steps required to be taken to bring the plans on for hearing and consummation (§ 6, subds. 1, 2, 3); (6) in the case of plans promulgated by others, the payment of any expenses not covered by the deposit provided for in subdivision 4 of section 6, and, as to any such plans which may become operative, the refund of the deposit " out of any funds which may have come or may come into his possession out of such property " (§ 6, subd. 4). Although, as previously observed, no issue may properly be charged with expenses of the Superintendent which do not relate to that issue, there can be little doubt as to the Legislature's power to assess upon certificate holders the reasonable cost of the Superintendent's services, in so far, at least, as the services are rendered for their benefit. It appears to be equally clear that in every issue involved in the applications now before the court, the Superintendent of Insurance or the Servicing Corporation of New York may have performed at least some services for which a servicing charge might appropriately be made. In this class would fall (a) legal and other expenses incurred in connection with reorganization proceedings (§ 6); (b) the expense of the accounting and

auditing departments required to verify and check the statements rendered by the Federal receivers and the work performed by them as well as to calculate the proper amount of the Superintendent's deductions (§ 4, ¶ b), and (c) the expense of maintaining a certificate transfer department to enable the Superintendent to send notices of reorganization proceedings to the actual owners of outstanding certificates. The question of the proper amount of the servicing fee, small or large, is not now before the court. The issue is only as to whether the Superintendent is entitled to *any* servicing fee.

In the reorganization proceedings before the court in *Matter of New York Title & Mortgage Co.* (155 Misc. 653) the representative of the Superintendent of Insurance had stated that the only services rendered by the latter consisted of paying taxes, sending statements to certificate holders and keeping in contact with them. No mention was made of most of the services now referred to in the Superintendent's petition. Moreover, even though the services referred to by the Superintendent's representative were few and of minor importance, the court did not state that the Superintendent was entitled to no fee for them, but only that no " substantial " servicing fee was justified.

It is vigorously argued that the Superintendent of Insurance has forfeited all claim to a servicing fee because the equity receivers for Liberdar and Land Estates were appointed upon the application of his own predecessor (jointly with another). It must, however, be borne in mind that Mr. Van Schaick was not appointed rehabilitator of the title company in order to represent and further the interests of the certificate holders exclusively. Unfortunately, under the statutes authorizing the Superintendent to rehabilitate a domestic insurer, he owed no greater obligation to certificate holders than he did to general creditors or even stockholders of the insurer. This court, almost two years ago, pointed out that the Superintendent of Insurance was under a statutory duty to represent conflicting interests: " The Superintendent of Insurance has been forced by the statutes defining his duties to accept the position of acting for conflicting and antagonistic interests in the rehabilitation proceedings. He must perforce seek to conserve the assets of the various companies engaged in the business of guaranteed mortgages. He clearly owes a duty to the creditors and the stockholders of these companies. * * * The creditors themselves are divided into two classes, the first consisting of general creditors who have no interest in the collateral securing guaranties issued by the company, and the second comprising certificate holders * * *. In many instances the interests of those two classes of creditors conflict and the Superintendent thus occupies a dual role." (*Matter*

*of Nemerov,* 149 Misc. 797, 805, 806.) Although there is more than a little basis for the view that the application for the appointment of Federal receivers for Liberdar and Land Estates (wholly owned subsidiaries of the title company and, therefore, controlled by the Superintendent as rehabilitator of the company) was ill advised — no similar application was made in respect to subsidiaries of the other large title companies which the Superintendent took over — it cannot be said that the application was not made in good faith. There may at least have been some justification for Mr. Van Schaick's action since an equity receivership might prevent certain general creditors of the subsidiaries from receiving unjust preferences over the title company, which was the largest creditor by far. Bearing in mind the fact that the former Superintendent, as rehabilitator, was charged by statute with the task of representing the conflicting and adverse interests of the title company's general creditors, certificate holders and stockholders, it is impossible to hold, on the papers now before the court, that the application for the appointment of receivers was such an unjustifiable and improper act that by reason of it the Superintendent forfeited the right to servicing fees which he would have possessed if the receivers had been appointed without his predecessor's participation or assistance.

It follows from what has been said that the six applications must be denied and the counter motion granted to the extent of determining that the Superintendent and the Servicing Corporation of New York, as his agent, are entitled to deduct from the funds received for the benefit of certificate holders the reasonable cost of servicing the mortgages involved in the Superintendent's application.

It does not follow, however, that the expenses of the Liberdar and Land Estates receiverships are also to be borne by the certificate holders. Although the question whether the receivership expenses are properly chargeable against the funds of the certificate holders is one which is not squarely presented for determination by any of the motions now before the court, it is a question which is so closely related to the issue actually submitted for decision, viz., the Superintendent's right to a servicing fee where the receivers managed the properties, that it is highly desirable to make a few observations on the subject. In addition to the $184,336.26 which the Superintendent has reserved for the payment of servicing fees while the receivers were in charge, the latter have reserved $414,185.74, more than twice as much, for their administrative expenses in connection with the same properties for the same period. As the receivers did not manage the properties directly but appointed real estate agents for that purpose, a duplication of services resulted (the receivers' services and those of the Superintendent) which was

wholly unnecessary from the certificate holders' point of view. Had there been no receivers, the Superintendent or the Servicing Corporation of New York would have supervised the managing agents directly instead of supervising the activities of the receivers who, in turn, supervised the work of the agents. The total sum reserved for the direct and indirect supervision of the managing agents of the properties is $598,522, more than three times the amount of the reserve which would probably have been set aside had there been no equity receivers.

That the former Superintendent of Insurance was instrumental in bringing about the appointment of the receivers is conceded in the petition of his successor. The petition alleges (Par. 6) that immediately after Mr. Van Schaick took possession of the title company he caused a survey to be made which revealed *inter alia*, that creditors of the subsidiaries were threatening action which it was feared would result in the dissipation of their assets to creditors obtaining preferences, and (Par. 7) that " it was deemed that a suit in equity in which a receiver could be appointed by the equity court offered the solution best calculated to safeguard the interest of certificate holders and other creditors of the Company." The petition admits (Par. 8) that Mr. Van Schaick accordingly joined in applications made by a foreign creditor for the appointment of equity receivers. One of the two receivers was a Deputy Superintendent of Insurance and the other an officer of the title company.

Although the former Superintendent's action might have been justifiable to the extent that he was seeking to protect the interests of the general creditors of the title company by preventing preferences and the dissipation of assets which would otherwise be available for the payment of the claims of the general creditors of the company, it is difficult to conceive of any benefits which could possibly result from the Federal receiverships to certificate holders *as owners of undivided interests in mortgages on the properties owned by Liberdar and Land Estates or as secured creditors of the title company* (as distinguished from their status as general creditors on the guarantees). The amount of property in the possession or control of the subsidiaries *as security* for the claims of certificate holders could, as far as appears, in no way be increased as the result of these receiverships. Although the Superintendent's petition on his instant motion attempts to justify the conduct of his predecessor in joining in the receivership applications, it does not contain even a suggestion that the receiverships could possibly have benefited the certificate holders *as secured creditors*. The prevention of preferences and the conservation of the subsidiaries' general assets could at best only increase the amount available for general creditors.

No preferential judgments could in any event be satisfied out of those assets which constituted security for certificate holders' claims. The reserves retained by the receivers have, however, been deducted from funds belonging (as security) to certificate holders and not from the general funds of the subsidiaries or of the title company. As between the certificate holders and the receivers this may be perfectly proper. However, as between the certificate holders and the general creditors of the title company it is neither just nor proper that the security belonging to the certificate holders be charged with the expenses of receiverships which could inure only to the benefit of the general creditors without conferring any advantage upon the certificate holders as secured creditors.

It follows that the expenses of the receiverships should be borne, as between the two sets of creditors, by the title company's general creditors who alone stood to benefit from the receiverships. The title company was " by far the largest creditor " of the subsidiaries and the prior Superintendent joined in the application for the receiverships *in order to protect the interests of the title company.* (See petition verified Jan. 12, 1934, in *Prudential Ins. Co. of America* v. *Land Estates, Inc.*) This is admitted in the Superintendent's petition of July 2, 1935 (Par 7): " In view of the foregoing and the inter-locking relationship between the company and its subsidiaries, it was deemed that a suit in equity in which a receiver could be appointed by the equity court offered the solution best calculated to safeguard the interests of the   *   *   *   creditors *of the company* " (*i. e.*, the title company).

If the receivership expenses, as hereinafter fixed by the Federal courts, should equal the entire amount reserved by the receivers, the certificate holders, on proper application, would seem to be entitled to an order directing the Superintendent of Insurance to reimburse them out of the funds available to general creditors of the title company. It is, however, unlikely that the Federal courts will allow the receivers the entire amount which they have set aside as a reserve, for the Circuit Court of Appeals has expressly declared that the allowance fixed " should not   *   *   * be greater than what the same care would have cost, had the petitioner [the Superintendent] been in possession." (*Prudential Ins. Co.* v. *Liberdar Holding Corp.*, 72 F. [2d] 395, 399.) Taking into consideration the servicing charges customarily made by the Superintendent of Insurance, the receivers' charges will probably be fixed at less than half of the reserve set aside by them, leaving a balance of more than $200,000 to be turned over for the benefit of certificate holders. In addition, the latter appear to be entitled to an order requiring the Superintendent to reimburse them, for the

amount allowed to the Federal receivers, out of the funds available to general creditors of the title company. The Superintendent will, therefore, be amply protected in making available to certificate holders at this time the $184,336.26 reserved by him for servicing fees, for he will be able to meet those fees, as ultimately fixed, out of the general funds in his hands and/or the surplus, if any, obtained from the Federal receivers. Under these circumstances there appears to be no justification for the further retention of the reserve by the Superintendent. The funds have been in his hands for a long time. Penalties and interest have accumulated for failure to pay taxes which could have been met out of the sums so reserved. Certificate holders have been deprived of moneys which could have been applied against interest due them. The Superintendent ought not to permit this situation to continue any longer. No formal motions should be required to release these funds.

The motion of the Superintendent is granted to the extent of (a) ordering a consolidation and (b) deciding that the Superintendent and the Servicing Corporation of New York are entitled to some servicing fee. In other respects, the Superintendent's motion is denied, but without prejudice. The motions with which the Superintendent's application has been consolidated are also denied.

Settle order.