In the Matter of the Liquidation of New York Title and Mortgage Company.

Supreme Court, Additional Special Term, New York County, January 11, 1939.

*Maurice Finkelstein* [*Solomon J. Heifetz* of counsel], for the Mortgage Commission of the State of New York.

*William A. Shea* [*Samuel Boksenbom* of counsel], for the Superintendent of Insurance, as liquidator.

*Barber, Fackenthal & Giddings* [*William A. Barber* of counsel], for the stockholders' committee.

*Kramer & Kleinfeld* [*B. Kaprow* of counsel], for the trustees of Series B-K.

*Raphael H. Weissman*, for the Golden Hill Building Corporation, stockholder.

*Smith, Chambers & Clare* [*Gerald Fitz Gerald* of counsel], for Messrs. Muldoon, Propper and Wallace, trustees.

*Gillespie & O'Connor*, for the trustees of St. Patrick's Cathedral.

*Weinstein & Levinson*, for creditors.

*Reeves, Todd, Ely & Beaty* [*Madison Marine* of counsel], for Morris J. Goldman, as trustee for Series N-54.

*Wingate & Cullen*, for the City Bank Farmers Trust Company, as trustee for Series KG-13, KG-14 and JJ-5 and for the National City Bank, as trustee under the will of John Henry Flatuve, deceased.

*Simpson, Thacher & Bartlett* [*H. J. McAfee* of counsel], for the City Bank Farmers Trust Company, as trustee for Series N-67, Series N-81 and Series N-88, and for the Commercial Bank and Trust Company of New York, as trustee for Series N-101.

*Thomas Keogh*, for the trustee of Series Q.

*Glass & Lynch*, for the trustee of Series B-N.

*Meyer Boskey* [*M. G. Tunick* of counsel], for the trustee of Series CW-1.

*Alexander E. Klupt*, for the trustee of Series C-3, the committee for Series N-19, and certain certificate holders.

*Abraham J. Halprin*, for the trustees of Series C-2, C-3, NS-1 and Q-1.

*Maurice B. Blumenthal*, for the trustee of Series BX-17.

*Wagner, Quillinan & Rifkind*, for the trustees of Series F-1, F and C.

*Sherman S. Rogers*, for the trustee of Series C-2.

*Abraham N. Geller* [*R. B. Block* of counsel], for the trustee of Series N-58, N-83 and N-108.

*Maass & Davidson* [*Monroe L. Friedman* of counsel], for the trustees under the will of Daniel Kops, deceased.

*Mitchell, Taylor, Capron & Marsh*, for the City Bank Farmers Trust Company.

*Broadwin & Mannheimer* [*Sidney R. Rossiter* of counsel], for the trustee of Series W-4.

*Mortimer L. Rabson,* for the trustee of Series N-69.

*Adolph Kaufman,* for the trustees of Series N-94.

*Konta, Kirchwey & Engel* [*Frederick Chait* of counsel], for the trustee of Series N-91.

*Albert W. Fribourg,* for the trustee of Series N-76 and N-82.

*Gettner, Simon & Asher* [*Victor S. Gettner* of counsel], for the trustee of Series N-97.

*Cullen & Dykman* [*Stanley S. Hawks* of counsel], for the Brooklyn Trust Company.

*O'Malley & Wilson* [*George O. Lehman* of counsel], for the trustees of Series N-109.

FRANKENTHALER, J.   This is an application by the Superintendent of Insurance, as liquidator of New York Title and Mortgage Company, for an order (1) confirming his report in which various trust claims against the company have been allowed and others disallowed, and (2) approving a proposal by the Superintendent calling for his paying $1,000,000 in settlement of all trust claims finally allowed by the court.   Notice of the application has been given to all trust claimants, general claimants, creditors, stockholders and other persons possessing an interest in the company in liquidation.

On April 5, 1937, this court made an order fixing September 1, 1937, as the last day for the filing of trust claims against the company; 2,056 trust claims aggregating $176,022,677.56 were filed within the specified time.   According to the Insurance Department, " this total of claims asserted was patently far in excess of any actual trust liability, largely because claims were filed on practically all of the certificate issues asserting a trust claim for gross principal and interest and some of the holders of guaranties of whole mortgages likewise claimed a trust claim for the gross amount of principal and interest; and there are some duplications because of claims filed by certificate holders in addition to claims filed by the Mortgage Commission of the State of New York or by Trustees for the whole issue."   A careful review of all the trust claims by the Insurance Department resulted in a finding by it that 1,829 trust claims had no merit whatsoever as trust claims, and they were accordingly recommended for disallowance as trust claims, without prejudice to their validity as general claims. Twenty claims were withdrawn.   The remaining 207 claims were

recommended for allowance in amounts totaling $3,187,083.19. (This figure includes claims which this court, in seventy orders of segregation and/or adjudication, presently referred to, held were valid trust claims in the aggregate sum of $1,432,478.86.)

On the return day of the instant motion about eighty objections to the Superintendent's recommendations were filed by claimants whose trust claims had been disallowed either *in toto* or partially. Approximately a third of these objections were thereafter settled or withdrawn as a result of negotiations between the Insurance Department and the claimants. At the request of the Superintendent of Insurance and without opposition by any one, a referee was appointed to hear the remaining objections and to report thereon to this court. Hearings on said objections are now in progress before said referee, Thomas J. Crawford. After the coming in of the referee's report, the court will pass upon the first branch of the present application, which involves solely a judicial determination as to which trust claims are valid and in what amounts. In the meantime the matter will be held in abeyance.

Turning now to the second branch of the motion, we find that in settlement of the trust claims which he has already recommended for allowance, totaling $3,187,083.19, plus such additional trust claims as have been allowed as the result of the settlements previously referred to and those wnich may hereafter be allowed by the court on the basis of the referee's report, the Superintendent of Insurance proposes to pay $1,000,000, said payment to be distributed *pro rata* on account of all the allowed claims. The largest portion of the trust claims, as the Superintendent points out, arose from the fact that prior to rehabilitation the company — despite the existence of unpaid taxes, water charges and similar liens — used rents received, under rent assignments and otherwise, from properties securing mortgages which it had guaranteed, to reimburse itself for payments which it had previously made to mortgagees and certificate holders on account of guaranteed interest. When the question of the validity of such reimbursements was first presented for judicial determination, this court overruled the claim of the then Superintendent of Insurance that the company had the right to reimburse itself (*Matter of People* [*Lawyers Title & Guar. Co.*], 149 Misc. 498, 509, 510, 511), holding that the rents received by the title company under rent assignments made by mortgagors constituted trust funds belonging to the mortgagees (pp. 506, 508). Accordingly, this court decided that the mortgagees possessed valid trust claims for the amounts wrongfully recouped by the company and that they were entitled to payment of such of the misapplied trust funds as could be traced. (See *Matter of*

*N. Y. Tit. & Mtge. Co.*, 149 Misc. 488, 497; 150 id. 351, 352.) These holdings were affirmed by the Appellate Division and by the Court of Appeals (*Matter of City Bank Farmers Trust Co., supra;* affd., 241 App. Div. 808; affd., 265 N. Y. 20; *Matter of People* [*N. Y.* *Tit. & Mtge. Co.*], *supra;* affd., 241 App. Div. 807; affd., 265 N. Y. 30. See, also, Id. 287), and have established the validity of trust claims based upon recoupments made by the company from rents received while in default upon its guaranty or while taxes or similar liens remained unpaid. (See *Matter of New York Title & Mortgage Co.*, 162 Misc. 117; 163 id. 383. See, also, an article by Henry Spitz, entitled "Trust and General Claims against Defaulted Title and Mortgage Guaranty Companies," N. Y. L. J. Nov. 30, 1938, p. 1868; Dec. 1, 1938, p. 1890; Dec. 2, 1938, p. 1912.) Numerous applications were thereafter made by the mortgagees or their representatives for orders directing the Superintendent of Insurance to turn over to them the amounts of such wrongful recoupments. As the funds of the company into which the misappropriated money had been deposited and with which it had been mingled might prove insufficient to meet all the trust claims which might ultimately be asserted against such funds, these applications were granted only to the extent of directing the Superintendent of Insurance to segregate the amounts improperly recouped in separate accounts until the total amount of valid trust claims which might be asserted against the funds charged with or available to meet them could be ascertained. (*Matter of New York Title & Mtge. Co.*, 151 Misc. 701, 706; *Matter of Lawyers Title & Guar. Co.*, 162 id. 122, 124.) These orders of segregation did not, however, dispense with the necessity that the trust claimants, in order to obtain a preference over general claimants, ultimately succeed in tracing misappropriated moneys into a specific or mingled existing fund. As this court pointed out in *Matter of New York Title & Mortgage Co.* (*Series F-1*) (163 Misc. 454, 456): " It appears to be the settled law of this State that trust claims are not entitled to preference in insolvency proceedings merely because of their trust nature and without tracing the trust funds into the remaining assets." The purpose of the orders of segregation was merely to insure that the Superintendent would not, prior to the conclusion of the attempts to trace, use up in the course of the liquidation moneys which trust claimants might later successfully trace into a specific or mingled fund remaining in the company's possession.

The possibility that, in the absence of segregation, funds which could later be traced might be used up in the conduct of the rehabilitation and liquidation had previously been pointed out by this court in *Matter of Lawyers Title & Guaranty Co.* (150 Misc. 174,

at p. 178): " As the Legislature has fixed no time limit in respect to the duration of efforts to rehabilitate an insurer, it is conceivable that rehabilitation may last indefinitely, perhaps for years. In the meantime claimants of mingled and unidentifiable trust funds are left without any remedy. Indeed, it is quite possible that the mingled trust funds belonging to the petitioner and others similarly situated are being used up for the purpose of operating the company during rehabilitation. * * * By the time liquidation is ordered, if that course should ultimately prove necessary, the owners of the mingled trust funds may find them entirely used up."

Between July 19, 1934, and December, 1937, this court made sixty-seven orders of segregation relating to the New York Title and Mortgage Company, aggregating $1,428,925.29, and three orders adjudicating trust claims in the sum of $3,553.57, a total of $1,432,478.86. In order to make possible a determination as to the amount of all valid trust claims, this court made the order of April 5, 1937, heretofore referred to, fixing September 1, 1937, as the last day for filing trust claims.

In support of his application for approval of the proposed settlement of all the trust claims for $1,000,000, the Superintendent points out that although all of the trust claimants, in order to recover as such and thus obtain a preference over general claimants, must succeed in tracing their property into assets still in the possession of the insolvent, " there are presumptions in favor of trust claimants and in aid of tracing," and that one such presumption is " that where trust money is mingled with other money, any money remaining in the mingled account is presumed to be trust money." In May, 1934, this court pointed out the existence of said presumption in *Matter of New York Title & Mortgage Co.* (151 Misc. 701), overruling the contention that the mortgagee in that case could not recover wrongfully recouped funds, which had been mingled with the company's general funds (p. 705): " The fact that the company made payments of interest to the petitioner on September 1, 1932, and March 1, 1933, without having received from the owner of the mortgaged property the sums necessary to make such payments would not affect this conclusion, since the payments would be deemed to have been made from the company's own funds, and the trust funds belonging to the petitioner would be regarded as having remained in the mingled bank account to the very last. (*Matter of Holmes*, 37 App. Div. 15; affd., 159 N. Y. 532; *I. & T. N. Bank* v. *Peters*, 123 id. 272, 278.) " The Superintendent states that up to March, 1933, the company had $2,000,000 or more in bank accounts in which the improperly recouped funds were largely deposited, and that $1,000,000 of this $2,000,000 or

more was thereafter invested by the Superintendent in June, 1933, in United States government obligations, in order to obtain a return on idle funds; that a large portion of the company's cash and of the United States government obligations were transferred by the Superintendent, at the date of the order of rehabilitation, to the New York Title Insurance Company, the subsidiary formed by him at the time. These assets, according to the Superintendent, can probably be traced into New York Title Insurance Company and its successor, Lawyers Title Corporation of New York, all of whose common stock is held by the Superintendent, as liquidator of New York Title and Mortgage Company. An investigation conducted by the Insurance Department has indicated that " while any individual trust claimant would probably have difficulty in tracing his money as against other trust claimants, the trust claimants *as a class*, by virtue of the above-mentioned presumption that the money remaining is trust money, could possibly establish a trust estate of the money remaining when the Company ceased active business, and that the proceeds of that money could be traced." The Superintendent has been advised by his counsel " that a trust estate might be established to be shared in by all trust claimants of between something less than $1,000,000 and $2,000,000 or more."

The evidence adduced by the Superintendent establishes that there is ample basis for this advice and that there is a reasonable possibility that the trust claimants as a class may be able to trace their funds into $2,000,000 or more of the assets belonging to the Superintendent (either directly or through subsidiaries), as liquidator of New York Title and Mortgage Company. In such event, if the trust claimants should organize and combine or unite their claims, which is not at all unlikely, they may be able to recover as much as $2,000,000 or more ahead of general creditors. Having in mind this possibility, as well as the tremendous expense which the company in liquidation would probably be put to if the Insurance Department were obliged to resist the efforts of the trust claimants to trace their funds, and the enormous delay which would necessarily result in the liquidation of the company, the Superintendent of Insurance has come to the conclusion that a settlement of all the trust claims for $1,000,000 is advisable in the best interests of the general creditors and of the stockholders.

The proposed settlement is approved by the Mortgage Commission and has been formally consented to by holders of about eighty per cent of the trust claims which have been recommended for allowance. According to the Superintendent's moving papers he has been advised that various other holders of trust claims " intend to consent to our proposal as soon as they have completed

their check of our figures and have satisfied themselves that our determination as to the amount of their claims is correct, so that in the aggregate the holders of more than ninety per cent of all the trust claims, as determined by us have expressed agreement with our proposal." Only two objections have been asserted on behalf of trust claimants and general creditors. One has since been withdrawn, while the other objector failed to appear at the hearing in support of his objection and the same has been dismissed by this court. At the present time, therefore, no trust claimant or general creditor is opposed to the proposed settlement.

The only objections to the settlement proposal have been interposed by a firm of attorneys for a group of stockholders and by the attorney for Golden Hill Building Corp., another stockholder. Their contention that the Superintendent has not shown that any claimant will succeed in tracing specific moneys is sufficiently answered by pointing out that it has been established that there is a reasonable possibility that the trust claimants may organize and successfully assert a combined trust claim against the specific or mingled assets which may exceed $2,000,000. In order to justify a proposed compromise it is unnecessary to prove conclusively or definitely that the trust claimants will otherwise recover a considerably greater amount than that proposed to be paid under the terms of the settlement. The Superintendent need only show that there is a reasonable possibility that this may occur, and that he has done. The judgment of the Superintendent of Insurance, an administrative officer of the State, as to the advisability of a proposed compromise, is entitled to great weight and is not lightly to be set aside. As this court said in *Matter of Globe & Rutgers Fire Ins. Co.* (148 Misc. 497, at p. 499): " The court * * * recognizes that the recommendations and views of an administrative officer, charged with the performance of statutory duties, are entitled to great weight and careful consideration, and are not to be disregarded or brushed aside except for cogent reasons."

Under the provisions of section 421 of the Insurance Law the Superintendent is authorized to compromise and settle claims against the company, subject only to the court's approval. Certainly, there is nothing in the record to warrant disagreement on the court's part with the conclusions reached by the Superintendent after an exhaustive investigation into the facts and consultation with accountants and counsel. On the contrary, the proposed settlement appears to be eminently advisable from the standpoint of the general creditors and of the stockholders as well (assuming that there will be any equity for the stockholders), whose interests the Superintendent represents. It involves payment of only about half of the amount which may ultimately be recovered by the

trust claimants in the absence of a settlement, and it saves the estate the tremendous expenses which defending the trust claims would entail as well as the long delay in distribution and liquidation which would necessarily ensue. If it were necessary for the Superintendent, in order to justify judicial approval of the proposed settlement, to show definitely that the trust claimants could otherwise actually recover a considerable sum in excess of $1,000,000, the trust claimants would obviously refuse to consent to the proposed settlement, for they would be able to recover a much larger amount on the basis of the admissions thus contained in the Superintendent's papers. In such a situation the trust claimants would naturally possess no incentive to give their approval to the proposed settlement.

The argument is also made on behalf of the objecting stockholders that no payments should be made on account of trust claims until all the general claims have been determined. It is further urged that even if this court should approve the proposed settlement the $1,000,000 should not be immediately paid over, but should be set aside and earmarked for the trust claimants, *pro rata,* pending the determination and allowance of the general claims against the fund. These contentions apparently overlook the fact that the theory underlying the trust claims is that the title company has misappropriated funds belonging to the trust claimants and that in recovering on the trust claims they are merely obtaining a return of their own property. (*Matter of City Bank Farmers Trust Co.,* 149 Misc. 498, 512; *Matter of Lawyers Mortgage Co.,* N. Y. L. J. July 3, 1937, p. 35.) In the latter case this court stated that " The fact that the company here is in rehabilitation and not in liquidation is immaterial, for trust claims relate to property in the hands of the company which does not belong to it and which is therefore not properly included among its assets," while in *Matter of City Bank Farmers Trust Co.* (*supra,* at p. 512) this court said: " The claim is made, in opposition to the present application, that petitioner may not assert a right of reclamation without tracing the rents collected by the company into a separate and identifiable fund. It has already been pointed out that the collections made by the company constitute the latter a trustee for the petitioner and that the relationship is not one of debtor and creditor. *The funds are the property of petitioner* and the latter's right to claim them is not destroyed merely because the company mingled them with its other funds. ' The mere mingling of funds which are to be devoted to a specific purpose with other funds of the depositary *does not destroy the right of the true owners to claim such specific funds.'* (*Brown* v. *Spohr,* 180 N. Y. 201, 212; *Van Alen* v. *American Nat. Bank,* 52 N. Y. 1; *Central Nat. Bank* v.

Conn. Ins. Co., 104 U. S. 54.) (Matter of International Milling Co., 259 N. Y. 77, 82, 83.) "

Although the stockholders' objections have been considered and overruled on the merits, it is well to point out that stockholders of an insurer in liquidation are not legally entitled to notice on an application by the Superintendent of Insurance for approval of proposed compromises of claims against such insurer, and that the notice to stockholders in the instant case was given as a favor and not as a matter of right. In this connection mention might also be made of the fact that the report filed by Referee James A. Martin in a proceeding for the reorganization of New York Title and Mortgage Company stated that (pp. 21, 22) 50,592 claims, aggregating $460,659,373.35, had been filed in the liquidation proceeding, based on certificates, guaranteed mortgages, title policies, etc., while the amount estimated to be available for general creditors was only $16,014,411.42, and the book value of the company's assets only $63,196,865.47. To quote from said referee's report:

" Fifty thousand claims were filed in the liquidation proceeding for a total of in excess of $460,000,000, made up as follows:

| Basis of claim | Number of claims | Amount |
|---|---|---|
| Certificate | 37,917 | *$178,068,611 18 |
| Guaranteed Mortgage | 10,531 | 141,081,308 63 |
| Title Policy | 928 | 122,452,821 96 |
| Stock | 1,375 | 847,952 35 |
| Miscellaneous | 363 | 18,208,679 23 |
| Total (Less Duplication) | 50,592 | $460,659,373 35 |

" It is likely that there will be a large reduction in the total number of and amount of claims when claimants are put to their proof by the Superintendent of Insurance, as Liquidator, particularly when the value of security held by the respective claimants is deducted in accordance with the provisions of Section 425 of the Insurance Law. The establishment of a formula for the evaluation of such security has just been passed upon by the Court of Appeals. (New York Title and Mortgage Company, Clark Appeal, January 25, 1938.) It would be difficult, if not impossible, to determine with any degree of accuracy the number and amount of the claims on guarantees, even though all problems in respect of the formula to be applied shall have been solved. Sufficient has been shown, however, to indicate that the company's liabilities will exceed its assets by a substantial amount."

---

* " Total amount of certificate claims filed was $422,489,859.72, but this figure includes duplication of claims by individual holders, the Mortgage Commission and Trustees (Ex. 107)."

The referee found that "the company's liabilities will exceed its assets by a substantial amount" and that (pp. 57, 58) "New York Title and Mortgage Company is so clearly insolvent that no equity can exist for stockholders  *  *  *.  If ever there was any doubt as to such lack of equity for stockholders, it has been dispelled by the decision of the Court of Appeals rendered on January 25, 1938 (*Matter of New York Title and Mortgage Company, Clark Appeal*), sustaining the so-called mortgage formula and holding, in effect, that the 'security' to be determined in computing the claims of creditors shall consist of the value of the mortgage or certificate held by such creditor and not the value of the underlying real estate.  While it is impossible in the present state of the proceedings to estimate accurately the total at which the filed claims will be allowed, it seems clear beyond reasonable question that such total will far exceed the estimated realizable value of the assets of the company."

If these views of the referee are correct the stockholders can obviously not be prejudiced by this or any other proposed settlement of the trust claims.

Until a trust claimant has received all sums due on his mortgage or certificate he is entitled to the collateral belonging to him under the provisions of the bond and mortgage and which the company has no right to retain.  No contention has been made that any of those whose trust claims have been recommended for allowance as meritorious have already been paid in full all that is due them on the mortgages or certificates held by them.  No objection having been made to any of the allowances of trust claims recommended by the Superintendent, it must be assumed that none of the holders of the allowed trust claims have hitherto received payment of whatever was due them on their mortgages or certificates.  As to the trust claims now being heard by the referee, it is to be assumed that none will be recommended for allowance if the claimant has already received payment of the full amount due him.  Should the contrary appear on the motion to confirm the referee's report, the court will, of course, disallow such claims.

The proposed settlement meets with the approval of the Mortgage Commission, the statutory representative of the certificate holders, and, in addition, is satisfactory to the certificate holders themselves, for not a single one of them is opposed.  It is likewise acceptable to all the other general creditors as well as to the trust claimants.  It is approved by the Superintendent of Insurance as liquidator of the company.  The sole objection is that interposed by some of the stockholders, who, as previously pointed out, would in all probability never realize anything from the liquidation even if the

settlement were rejected, not to mention the fact that they are without legal standing on the present application. It is more than five years since the company was placed in rehabilitation and more than three years since the entry of the order of liquidation. Disapproval of the settlement proposal would mean additional years of delay while the various trust claimants seek to trace their trust funds. Even if it be assumed that the amounts successfully traced would prove ultimately to be less than $1,000,000, the enormous expenditures which the Insurance Department would necessarily incur for legal and accounting services in resisting these tracing efforts as well as the large additional expense of keeping the liquidation proceeding open, would in all likelihood more than offset the difference. Although the trust claims filed against the company amounted to more than $176,000,000, the Insurance Department has, in its recommendations to the court, reduced this figure to approximately $3,000,000, and is offering to settle the trust claims for only $1,000,000. For the reasons heretofore indicated this offer appears to be fair and just to all concerned, and no good reason for rejecting it has been disclosed. That branch of the application which seeks approval of the proposed compromise of all trust claims for $1,000,000 is, accordingly, granted. The balance of the motion will be held in abeyance pending the coming in of the referee's report. Settle order after the filing of said report and after the court shall have passed upon motions to confirm and/or reject the report.