In the Matter of the Liquidation of NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of an Application for the Approval of Certain Agreements for the Purchase of and Ultimate Liquidation of the Assets of LIBERDAR HOLDING CORPORATION and LAND ESTATES, INCORPORATED.*

Supreme Court, Additional Special Term, New York County, April 11, 1939.

* Affd., 257 App. Div. ——.

*Barnet Kaprow, Edwin A. Tennant* and *Thomas Keogh,* creditors' committee, for the motion.

*Clark & Reynolds [Edward F. Clark, John A. Shortem* and *Albert B. Gins* of counsel], attorneys and solicitors for The Prudential Insurance Company of America, etc., opposed.

FRANKENTHALER, J. Four applications, two by creditors' committees of Land Estates, Incorporated, and Liberdar Holding Corporation, respectively (hereinafter referred to as " Land Estates " and " Liberdar "), and two by the Superintendent of Insurance, as liquidator of New York Title and Mortgage Company (hereinafter referred to as " the title company "), have been consolidated into one proceeding. Those by the Superintendent of Insurance seek approval by this court (1) of the Superintendent's execution of agreements with said creditors' committees and the primary and ancillary receivers of Land Estates and Liberdar, which, if approved by the Federal court, will terminate the Federal equity receiverships of Land Estates and Liberdar which have been in existence for about five and one-half years, and (2) of settlement agreements disposing of all claims and liabilities owing from Land Estates and Liberdar to the Superintendent, as liquidator of the title company, and *vice versa.* The applications of the creditors' committees have for their object this court's approval of the agreements entered into by them with the Superintendent of Insurance, particularly in so far as such agreements affect trustees of certificated issues who have claims against Land Estates and Liberdar, said trustees having been designated in reorganization proceedings in this court and being subject to its jurisdiction. Additional relief is asked for in the motions made by the creditors' committees, reference to which will be made presently.

Prior to August, 1933, Land Estates and Liberdar were subsidiaries of the title company, their business consisting primarily of taking title to and operating properties foreclosed by the parent company and accepting deeds to and operating properties obtained by the latter without foreclosure. Where there was a partial foreclosure the mortgage generally remained outstanding, and where there was a full foreclosure a new mortgage was ordinarily made to the parent company, which the latter either retained, or sold with its guaranty, or placed in a guaranteed certificated issue. On August 16, 1933, shortly after the title company was placed in

rehabilitation by this court by order of August 4, 1933, receivers in equity were appointed for both Land Estates and Liberdar by the United States District Court for the Southern District of New York in actions brought by Prudential Insurance Company of America. The receivership proceedings were concededly instituted at the request of the Insurance Department, for the purpose of protecting the general creditors of Land Estates and Liberdar. Reference has already been made by this court to the circumstances under which the receivership proceedings were instituted. (*Matter of New York Title & Mortgage Co.*, 157 Misc. 476, 485.) The receivers have at all times been designees or special deputies of the Superintendent of Insurance. On September 6, 1933, ancillary receivers were appointed for Land Estates and Liberdar by the United States District Court for the Eastern District of New York, all of whom except one have at all times been designees of the Insurance Department.

Proceedings for the determination of claims against each of the companies in receivership have already been had in the Federal court for the Southern District of New York, the primary jurisdiction. The reports of the special master appointed to hear the claims have been confirmed by the Federal court and the claims against each company, trust as well as general, have practically all been determined. The claims allowed against Land Estates aggregate $2,801,204.14, while the estimated realizable value of the assets available to meet them was, as of December 1, 1938, only $921,287.46 (exclusive of certain unfixed administration charges). The claims allowed against Liberdar total $3,795,068.57, while the estimated realizable value of the assets available to meet them was, as of December 31, 1938, only $928,669.07 (exclusive of certain unfixed administration charges). The general (as distinguished from trust and preferred) claims against Land Estates total $2,591,973.39, of which $2,454,341.87 are held by trustees of certificated issues based on bonds of Land Estates. More than half of the general claims held by trustees of these certificated issues belong to the trustees of three series, C-2, F-1 and BK, viz., $1,476,559.42. The general claims against Liberdar amount to $3,499,000.91, of which trustees of certificated issues based on bonds of Liberdar own $3,363,468.87. More than half of the general claims belonging to trustees are held by trustees of the three issues above referred to, C-2, F-1 and BK, viz., $1,827,412.20.

When it became evident to the Superintendent of Insurance during the spring of 1938 that the allowable claims against each company would far exceed the assets available to meet them, he called a meeting of the larger creditors and informed them that he was

willing to abide by their decision as to whether the receiverships should continue or some other course should be followed, provided only that the estate of the title company, of which he was liquidator, was adequately protected. After numerous conferences, plans were prepared, the purpose of which was to terminate the receiverships and liquidate the assets of the companies. These plans were submitted by the Superintendent to all the creditors of the companies, at a meeting called for that purpose, and only one creditor, the Prudential Insurance Company of America, holding a general claim of $10,962.69 against Liberdar, objected. (Said objector also holds a trust claim against Liberdar of $17,944.81, which is, however, to be paid in cash under the plans and which is, therefore, not involved or affected.)

In view of the overwhelming sentiment of the creditors in favor of the two plans, the Superintendent entered into agreements for their adoption with the creditors' committees of Land Estates and Liberdar, subject, however, to the approval of the Federal court and of this court. He now seeks this court's approval of his execution of the agreements.

The general scheme of each plan is: (1) That those creditors who assent to its provisions are to bid for and purchase the assets of the company from the receiver at a price to be approved by the Federal court as fair, using the amounts payable to them as dividends on their claims in payment of the purchase price; (2) that the non-assenting creditors are to be paid in cash their proportionate shares of the price fixed or approved by the Federal court; and (3) that the assets of the company purchased by the assenting creditors are to be transferred to and administered and liquidated by a trustee, designated by and acting under a declaration of trust approved by this court.

The creditors' committees have already received the consents and assignments of about ninety-six per cent of the general claims against Land Estates and Liberdar, as allowed by the Federal court. Trust and preferred claimants are to be paid in full the amounts of their claims as fixed by the Federal court and are accordingly not affected by the plans. Even as to these claims, however, the creditors' committees hold consents and assignments of about fifty-five per cent of the claims in the case of one of the companies and about sixty-five per cent in the case of the other. Only three general creditors have filed objections, two of them holding general claims against Land Estates, aggregating $4,787.57, and the third, Prudential Insurance Company of America, holding a general claim against Liberdar for $10,962.69. The only other objection to the plans is that interposed by the stockholders' committee of

the title company. The Mortgage Commission has expressed the view that judicial approval of the agreements will result in great benefit to the certificate holders through (1) a prompt termination of the protracted equity receiverships, (2) a substantial reduction in administration expenses, and (3) speedier and more economical liquidation of the assets than that which could be accomplished if the receiverships were permitted to continue.

The various objections to the plans require only brief discussion.

The contention is made that the proposed plans are unfair to *unsecured* general creditors, such as Prudential Insurance Company of America, in that the claims of the *secured* general ·creditors, who consist in the main of trustees of certificated issues, are allowed at their full face amounts without any deduction of the value of the collateral securing such claims. A short and decisive answer to this objection is that the fixation of claims by the Federal court having charge of the equity receiverships of Land Estates and Liberdar is necessarily conclusive upon this court as well as upon all the parties to the receiverships. Manifestly any distribution of the assets of any company in Federal receivership must be made in accordance with the claims as allowed by the Federal court which created and controls the receiverships. The proposed plans are predicated upon and recognize the binding effect of the orders of the Federal court pertaining to the allowance of claims against Land Estates and Liberdar. Each of them does, it is true, contain a provision that bond creditors " whose claims have been measured on the basis of deducting therefrom the value of their said mortgage security " may under certain conditions " be entitled to apply * * * for an order opening up the hearings on their claims, to which the parties hereto will consent, in order to fix such claims " in the same manner as the claims of bond creditors whose claims were measured and allowed without deduction of the value of their security. This provision does not, however, obligate or purport to obligate the Federal court to alter its previous fixation of such reopened claims. It merely authorizes an application to be made to the Federal court and gives the consent of the parties to the granting of such application in order that all creditors similarly situated may receive uniformity of treatment. In the last analysis, however, it is the decisions and orders of the Federal court which are to control. In this connection it should be noted that the orders of that court allowing the various general claims contain a provision that " dividends thereon to be limited to an amount which, together with the amounts realized from the respective securities, will not exceed the amount of the respective claims as so allowed."

Attack is also made upon a provision, contained in each plan, that "if the Creditors' Committee * * * is the successful bidder for the assets of the Debtor, * * * which assets shall include the Receiver's rights, as provided by law, to proceed against secured Creditors, for realization, if any, in excess of their respective claims, then Assenting Creditors shall not be subject to any claim or proceeding of whatsoever nature or kind in respect to or on account of any dividend paid or distribution made to them, or any security owned or retained by them, or for realization, if any, in excess of their respective claims." It is unnecessary to consider the basis of the objection to this portion of each plan, for the plans purport to affect and do affect the rights of only those creditors who *voluntarily* assent to the plans. The rights of those who do not assent to the provisions of the plan relating to their debtor company are adequately and completely protected by the provision that "their respective rights shall be determined in accordance with law," *i. e.*, each non-assenting creditor is to receive his proportionate share of the purchase price of the assets acquired by the creditors' committee representing creditors of his company. These assets, under the express provision of each plan, "shall include the Receiver's rights, as provided by law, to proceed against secured creditors for realization, if any, in excess of their respective claims;" and the value of the receiver's rights, in the case of each company, to recover from secured creditors any amounts which may be realized by them in excess of their claims is, therefore, to be taken into consideration by the Federal court in determining the fairness of the price bid for the assets by the creditors' committee. The price approved by the Federal court will, therefore, presumably include an adequate allowance for the value of this right to excess realization. It follows that when non-assenting creditors obtain their *pro rata* shares, in cash, of a price approved by the Federal court as adequate and fair for *all* the assets of each debtor company, including this realization asset, such non-assenters are obtaining all that they are legally entitled to. Their rights are in no sense interfered with by a provision that the creditors' committees who purchase the assets on behalf of assenting creditors shall, *after such purchase*, have no right to proceed against assenters for amounts alleged to have been realized by the latter in excess of their respective claims. The purchasing creditors may deal as they please with the purchased assets, just as any stranger who might purchase them could do. They may, as they are doing here, provide that their creditors' committees shall not enforce or collect one of the assets acquired from the receivers, viz., the right to recover excess realization from those creditors who may realize from dividends and their security more than the full amounts of their claims.

The argument that the provisions of the plan violate various sections of the Insurance Law, the Civil Practice Act, and the Debtor and Creditor Law, in allowing secured claimants to have their claims fixed at their full amount without deduction of collateral security, is one which should be addressed to the Federal court, not to this court. As previously observed, the assets of Land Estates and Liberdar, being in the hands of equity receivers appointed by the Federal court, must ultimately be distributed to claimants on the basis of the amounts of their claims as allowed by that court. It should be observed that a recent application by Prudential Insurance Company of America to the Federal court looking toward a modification of the fixation of claims so that they might be allowed only for the difference between their face amounts and the value of the underlying security, in support of which application arguments were made similar to those which have been advanced here, has just been denied. (*Prudential Ins. Co.* v. *Land Estates, Inc.; Prudential Ins. Co.* v. *Liberdar Holding Corp.*, 27 F. Supp. 668.)

The claim is also made that in settling the claims of the title company against Land Estates and Liberdar on secured bonds of the latter corporations held by the title company, the Superintendent of Insurance accepted an allowance of only the difference between the face amounts of the claims and the value of the collateral securing them. The objecting creditors urge that, therefore, the secured claims held by others than the title company should be measured in the same manner. Apart from the fact that this argument is a *non sequitur*, it should be pointed out that it appears to be based upon false factual assumptions. The special master had reported to the Federal court that Land Estates possessed an offset to the claims held by the title company against it in an amount exceeding such claims, the balance in favor of Land Estates being $1,001,311.88, and that Liberdar possessed a similar offset exceeding the claims of the title company against it by $134,139.89. For this reason and because of the further fact that a serious question existed as to whether the claims of the title company could be validly asserted against its own subsidiaries, in view of the character of the relationship and dealings which had existed between them, the Superintendent, as liquidator of the title company, felt justified in canceling all claims against the subsidiaries (other than certain claims for excess administration reserves held by the receivers, etc., which have been settled with the approval of the Federal courts for $98,000) in return for a cancellation and release by the subsidiaries of all claims against the parent company. The settlement appears to have been in no way influenced by or based upon

the theory that the title company's claims should be fixed for only the difference between their full amounts and the value of the security behind them. What has been said above answers not only the creditors' objection, previously referred to, but also the objection of the stockholders that the Superintendent should not permit claims held by him as liquidator of the title company against Land Estates and Liberdar to be settled on a less favorable basis than that upon which claims of other creditors of those companies were fixed.

Creditors' objections to various provisions of the proposed plans relating to such things as the expenses incurred and the powers of the creditors' committees, the fixation of a date beyond which non-assenters are to be barred from participation in the plans, etc., are sufficiently answered by repeating what has already been pointed out, viz., that these provisions affect only those creditors who voluntarily assent to the plans. Nor is there any merit in the objection to the provision contained in each plan that in the case of a creditor who also holds a guaranty issued by the title company, the proceeds realized on his claim against Land Estates or Liberdar should be deemed additional collateral in computing his total claim against the title company in the proceedings for the liquidation of said company. This provision is eminently fair and proper and the court can conceive no valid objection thereto.

In considering the objections raised by creditors of Land Estates and Liberdar it is well to bear in mind that neither of these corporations is an insurance corporation under the jurisdiction of this court and that the fairness of the plans to creditors of said corporations is a matter for the exclusive determination of the Federal court having complete charge and jurisdiction of said corporations.

Various objections have been filed by the committee of stockholders of the title company. One of them, relating to the Superintendent's alleged settlement of the title company's claims against Land Estates and Liberdar on a basis less favorable than that upon which the claims of other creditors were fixed, has already been discussed. Objection is also made to the approval of the proposed plans on the ground that they are unfair to the title company as the sole stockholder of both Land Estates and Liberdar, and, therefore, are unfair to the stockholders of the title company. It is claimed that in reaching the conclusion that both Land Estates and Liberdar are insolvent and that nothing will be left for the title company as sole stockholder of Land Estates and Liberdar, the Superintendent of Insurance has failed to give adequate consideration to the amounts which have already been realized and which will hereafter be realized by the claimants on the collateral

securing their claims. There are a number of answers to this objection. In the first place the right of each receiver to recover from every claimant any amount realized by such claimant (from dividends on his claim and from his security) in excess of the full amount of his claim is one of the assets to be sold by the receiver at a price which must be approved as fair and adequate by the Federal court. It is not to be assumed that said court will approve the sale of the assets of either Land Estates or Liberdar for a price which does not adequately and fairly represent the value of this so-called realization asset in addition to the other assets of the companies. (The plans provide, it is true, that the stock of Land Estates and Liberdar is to be turned over to the creditors' committees of those companies, apparently for the purpose of enabling these committees to collect assets located outside of the Southern and Eastern Districts of New York, and without any intention of depriving the Superintendant of Insurance, as sole stockholder of Land Estates and Liberdar, of the amount, if any, by which the price approved by the Federal court for the assets of each might exceed the aggregate claims allowed against said assets. Accordingly, as will presently appear, the plans will be modified so as to provide that the turning over of the stock shall not deprive the Superintendent, as sole stockholder of Land Estates and Liberdar, of the right to any such excess.) In the second place, the stockholders' statements regarding the value of the realization assets are mere estimates based upon inadequate and incomplete information. As against these unsatisfactory and unreliable estimates we have the report of the Deputy Superintendent of Insurance in which it is stated that an investigation and computation conducted by the Superintendent as to the minimum dividend payable to the trustees of Series C-2, F-1 and BK, the largest general creditors of Land Estates and Liberdar, after applying the realization value of their collateral and after adding interest from August 18, 1933, to December 31, 1938, less the estimated earnings on the collateral for that period, reveals that the minimum net amount due to the trustees of these three series *alone*, without giving consideration to the other general claimants of Land Estates and Liberdar, in the case of each company, " exceeds the total amount available for all general claims and expenses, and that these claims alone render both corporations insolvent and the stock of both corporations worthless." The evidence submitted by the stockholders in support of their criticism of the Superintendent's valuation of the realization assets as entirely too low is wholly inadequate to overcome the showing made on behalf of the Superintendent that after giving due credit for amounts realized in excess of creditors' claims,

both Land Estates and Liberdar are, nevertheless, insolvent. It should be remembered, also, as previously pointed out by this court (*Matter of New York Title & Mortgage Co.*, 170 Misc. 109, 119), that according to the report filed by the referee in a proceeding for the reorganization of the title company, " the company's liabilities will exceed its assets by a substantial amount," and that if the referee's findings are correct the stockholders of the title company will never receive anything and cannot be prejudiced by any settlements with creditors made by the Superintendent of Insurance.

The objection by the stockholders' committee to the proposed settlement of the Superintendent's claims against the receivers of Land Estates and Liberdar for excess administration reserves, etc., for $98,000, as inadequate, is not shown to posesss any merit. Said settlement has been approved by the Federal courts in the Southern and Eastern Districts of New York and appears to be fair and reasonable.

The granting of the applications now before the court meets with the approval of all the creditors of Land Estates and Liberdar who are affected thereby, except three general creditors whose total claims against both corporations amount to less than $16,000 out of over $6,000,000 of allowed claims. Both the Mortgage Commission and the Superintendent of Insurance are in favor of the applications. The only objections other than those of the three creditors above mentioned are those of stockholders of the title company, for whom in all probability there will never be any equity in any event.

The motions are granted, except that, as previously indicated, the plans are modified so as to provide that the turning over of the stock of Land Estates and Liberdar shall not deprive the Superintendent of Insurance, as sole stockholder of those companies, of the right to the amount, if any, by which the price approved by the Federal court may exceed the aggregate allowed claims of creditors. The cross-motion of the Prudential company to compel the Superintendent to petition the Federal court for certain directions to the receivers is denied.

Settle order.